721 F.2d 140
 William Johnson HAMMAN, Blake Campbell Hamman, and Eva J.
Hamman, Individually and as next friend of Robert
Charles Hamman, a minor, Plaintiffs-Appellants,
v.
SOUTHWESTERN GAS PIPELINE, INC., A Texas Corporation,
Defendant-Appellee.
 No. 83-1028.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 12, 1983.
 
 Law, Snakard, Brown & Gambill, Robert M. Randolph, G. Parker Young, Fort Worth, Tex., for plaintiffs-appellants.
 Cantey, Hanger, Gooch, Munn & Collins, Stephen L. Tatum, Fort Worth, Tex., Sewell & Forbis, James E. Forbis, Decatur, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before GOLDBERG, GEE and TATE, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 On this appeal we are asked to determine whether a pipeline owned by appellee Southwestern Gas Pipeline, Inc. ("Southwestern") is subject to the safety regulations promulgated under the Natural Gas Pipeline Safety Act, 49 U.S.C. Sec. 1671 et seq. (Supp. V 1981). We find that the pipeline is subject to the regulations and reverse the judgment of the district court.
 
 I.
 
 2
 In late 1976, Southwestern constructed a pipeline in Jack County, Texas, known as the "Worthington Lateral." The total length of the Worthington Lateral is 66,855 feet, of which 15,423 feet cross properties allegedly belonging to appellants. The Worthington Lateral terminates on both ends with block valves. Among the several functions of block valves is permitting the isolation of segments of the pipeline so that new wells may be connected to it.
 
 
 3
 The block valve at the northeastern end of the pipeline connects with three smaller pipelines. These three pipelines are attached to smaller lines which run to ten or so gas wells. The block valve at the southwestern end of the Worthington Lateral is also connected to several pipelines. Some of these pipelines lead to producing gas wells, and one of them leads to a gas processing plant.
 
 
 4
 Just short of the northeastern block valve, an interconnecting pipeline connects the Worthington Lateral to a pipeline known as the "Gladys Williams Line." The Gladys Williams Line, owned by Natural Gas Pipeline of America, transports gas from several wells to a processing plant in Bridgeport, Texas.
 
 
 5
 In October 1981, appellants filed suit in federal district court alleging that, in constructing the Worthington Lateral, Southwestern had violated regulations promulgated under the Natural Gas Pipeline Safety Act, 49 U.S.C. Sec. 1671 et seq. (Supp. V 1981) ("the Act"). In related claims made under the laws of Texas, appellants asserted that Southwestern had laid the pipeline across their property without the authority of a valid easement or right of way and that the pipeline hampered their use and enjoyment of the property. Southwestern moved for partial summary judgment on the federal claim. The district court granted the motion, dismissing the single federal claim and, in a second order, declined to exercise pendent jurisdiction over the remaining state claims.
 
 II.
 
 6
 Appellants argue that the summary judgment was procedurally improper in that they did not receive notice and a hearing as provided by Fed.R.Civ.Pro. 56(c). Southwestern filed its motion for summary judgment in August 1981. On September 25, 1981, appellants filed their response to that motion. Southwestern filed its rejoinder to appellants' response on October 30, 1981. In February 1982, the district court granted Southwestern's motion without having given express notice that it was taking the case under advisement.
 
 
 7
 Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment motion shall be served at least ten days before the time fixed for the hearing. We have previously interpreted the language of this rule as requiring notice to an adverse party and a hearing. Kibort v. Hampton, 538 F.2d 90, 91 (5th Cir.1976). Such a "hearing," however, need not necessarily be an oral one. Rather, the rule contemplates ten days advance notice to the adverse party that the matter will be taken under advisement as of a certain day. Id.
 
 
 8
 The Kibort court specifically stated, however, that procedures provided by local rules requiring motions for summary judgment to be accompanied by briefs and requiring opposing affidavits and briefs to be filed within a certain period afford an adequate hearing within the meaning of the rule. Id. at 91 n. 1. In Howell v. Tanner, 650 F.2d 610 (5th Cir.1981), we held that a local rule providing that a respondent to a motion for summary judgment must submit all briefs within ten days and that all motions would be decided without a hearing unless otherwise ordered by the court fully satisfied the notice and hearing requirements of Rule 56.
 
 
 9
 Local rules governing today's case are quite similar to those in Howell. Rule 5.1(e) provides that "[a]ny response to a motion shall be filed within 20 days from the date of filing of the motion. N.D.Tex.R. 5.1(e). Rule 5.1(f) provides that "[o]ral argument on motions will not be held unless directed by the Court." N.D.Tex.R. 5.1(f). These rules put appellants on notice that the district court could decide the motion at any time after 20 days had passed from the time it was filed. Appellants had filed a responsive brief. The requirements of Rule 56(c) were satisfied.
 
 III.
 
 10
 Appellants allege that Southwestern violated a safety regulation promulgated under the Act. This regulation requires that "transmission lines" be buried at least thirty inches below the surface of the ground. 49 C.F.R. Sec. 192.327 (1980). Appellants contend that the Worthington Lateral is such a transmission line and is buried less than thirty inches below the surface. The district court granted Southwestern's motion for partial summary judgment, holding that, as a matter of law, the Worthington Lateral is a "gathering line" and thus is not subject to the depth regulation.
 
 
 11
 A litigant is entitled to summary judgment if he demonstrates that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Central Oil & Supply Corp. v. United States, 557 F.2d 511, 515 (5th Cir.1977). The parties do not dispute any material fact.[1] Thus, the only issue before us today is whether the Worthington Lateral as described by the parties is a "gathering line" or a "transmission line."
 
 
 12
 The regulations define three types of pipelines. A "gathering line" is "a pipeline that transports gas from a current production facility to a transmission line or main." 49 C.F.R. Sec. 192.3 (1982). A "transmission line" is "a pipeline, other than a gathering line, that:
 
 
 13
 (a) Transports gas from a gathering line or storage facility to a distribution center or storage facility,
 
 
 14
 (b) Operates at a hoop stress of 20 percent or more of SMYS, or
 
 
 15
 (c) Transports gas within a storage field."
 
 
 16
 A "distribution line" is "a pipeline other than a gathering or transmission line." Id.
 
 
 17
 Southwestern argues that the Worthington Lateral falls under the gathering line definition. To do so, the pipeline must transport gas from a "current production facility." Although this term is not defined in the regulations, it appears to mean "gas well." The Hammans argue that the Worthington Lateral does not transport gas from a well but rather from a block valve which, through a series of pipes, eventually leads to several wells. Southwestern contends that this indirect connection to wells satisfies the regulation.
 
 
 18
 In interpreting a statute, a court should construe the language so as to give effect to the intent of Congress. Legislative history can evidence congressional intent. Solomon v. United States, 559 F.2d 309 (5th Cir.1977). Congress specifically stated that the purpose of the Act was to provide for "the prescription and enforcement of minimum federal safety standards for the transportation of natural and other gas by pipeline." H.R.Rep. No. 1390, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Ad.News 3223. Indeed, the House Report specifically discusses deaths caused by bulldozers or plows cutting pipelines that were buried too close to the surface. Id. at 3225. Safety legislation is to be liberally construed. Whirlpool Corp. v. Marshall, 445 U.S. 1, 13, 100 S.Ct. 883, 891, 63 L.Ed.2d 154 (1980).
 
 
 19
 Keeping in mind that Congress meant the Act to minimize accidents caused by natural gas pipelines, we hold that a pipeline must be directly attached to a gas well in order to meet the gathering line definition. The Worthington Lateral does not attach directly to a gas well but rather leads to several wells through a block valve and other pipelines. We cannot hold that every pipeline which eventually runs to a gas well will also be a gathering line. Nearly all pipelines connect to a gas well through other pipelines. Such a definition would conflict with the safety objectives of the Act and would severely limit the scope of the Act in a way that Congress could not have intended. The gathering line exception must be restricted to those pipelines that connect a transmission line to a gas well. The Worthington Lateral is not such a pipeline.
 
 
 20
 We therefore reverse the decision of the district court and remand for the court to consider whether the Worthington Lateral falls under any of the three definitions of transmission line, or should simply be classified as a distribution line. In addition, the court should determine whether the Worthington Lateral is buried 30 inches or more below the surface of the ground.
 
 IV.
 
 21
 Appellants also object to the district court's denial of their motion for summary judgment, which asked the court to find that the Worthington Lateral was buried less than thirty inches below the ground. Several months before appellants filed their motion for summary judgment, the district court had granted Southwestern's summary judgment motion and a motion for reconsideration of this decision was pending. Thus, at the time appellant moved for summary judgment on the pipeline's depth, there was an existing summary judgment determining that the pipeline was a gathering line. Since the depth regulations do not apply to gathering lines, and since the trial court had found the Worthington Lateral to be a gathering line, the depth of the Worthington Lateral could have had no legal consequence. To render summary judgment for appellants in this instance would have been to render an advisory opinion in violation of Article III, Sec. 2 of the United States Constitution. Environmental Defense Fund v. Alexander, 614 F.2d 474, 480 (5th Cir.), cert. denied, 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980).
 
 V.
 
 22
 Finally, appellants object to the district court's granting of Southwestern's motion to dismiss appellants' pendent state claims for lack of subject matter jurisdiction. Pendent jurisdiction is a doctrine of discretion and not of plaintiff's right. United Mine Workers v. Gibbs, 383 U.S. 715, 716, 726, 86 S.Ct. 1130, 1134, 1139, 16 L.Ed.2d 218 (1966). The decision to exercise pendent jurisdiction is within the discretion of the trial judge. Jackson v. Stinchcomb, 635 F.2d 462, 470-71 (5th Cir.1981). Here, the district court dismissed the pendent state claims solely because it had dismissed the single federal claim asserted at the outset of the action. Since our reversal of the federal claim removes the principal reason upon which the district court based its dismissal of the pendent state claims, we vacate the court's dismissal of such claims in order to enable the district court to exercise its discretion based on the differing variables now presented following reversal.
 
 VI.
 
 23
 The decision of the district court granting partial summary judgment is reversed. The district court's dismissal of the pendent state claims is vacated. The district court's denial of plaintiffs' motion for partial summary judgment is affirmed. The case is remanded for proceedings consistent with this opinion.
 
 
 24
 AFFIRMED in part, VACATED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 Southwestern denies that the pipeline is less than 30 inches below the surface of the ground. The depth of the pipeline, however, is not a relevant factor in classifying the pipeline for purposes of the regulation. Because we find that the Worthington Lateral is not a gathering line, the district court on remand should determine the depth of the pipeline in order to decide if the Act has been violated