William Johnson HAMMAN, et al.,
Plaintiffs-Appellees,

v.

SOUTHWESTERN GAS PIPELINE,
INC., a Texas Corporation,
Defendant-Appellant.

No. 86–1483.

United States Court of Appeals,
Fifth Circuit.

July 15, 1987.

Stephen L. Tatum, Virginia Sheehan, Ft. Worth, Tex., for defendant-appellant.

Ardell M. Young, William M. Brown, Fort Worth, Tex., for plaintiffs-appellees.

Before GOLDBERG, HILL, and JONES, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Eva Hamman and her three sons sued Southwestern Gas Pipeline, Inc. (Southwestern Gas) for trespass on her farm in Jack County, Texas. The district court ruled as a matter of law that Southwestern Gas was a trespasser, and the jury awarded damages to the Hammans for the trespass. Upon entering judgment, the district court awarded the Hammans past and prospective attorney's fees and prejudgment interest. Southwestern Gas now appeals contending that it was not a trespasser and that the damages, prospective attorney's fees, and prejudgment interest are improper. For the reasons given below, we affirm.

## I.

Gladys Johnson Ritchie was once married to William Johnson and is the mother of the plaintiff Eva Hamman. In 1949 Johnson died testate. He devised a large portion of his substantial real estate holdings to his wife Gladys. Among other interests she received under Johnson's will, Gladys obtained an undivided one half interest in fee simple in a Jack County farm and a life estate in the other undivided one half interest in the farm with the remainder in fee going to her daughter Eva. Gladys remarried in April 1955.

In October 1971 Eva sued her mother in Texas state court over title disputes to several pieces of property including the Jack County farm. Eva's challenge to her mother's title in these properties was premised upon allegations of mismanagement and waste by Gladys. In December 1974 Eva amended her petition specifically requesting that her mother's life estate on the Jack County farm be cancelled for waste and mismanagement. In March 1975 Eva again amended her petition claiming that her mother "had misused the Jack County farm, had squandered such property, and had committed waste." Based on these allegations Eva prayed for an accounting, a cancellation of her mother's life estate in the Jack County farm, and a judgment vesting title to the farm in her as her sole separate property.

With these pleadings on file in the Texas court for Jack County, Eva properly filed a lis pendens notice in the office of the County Clerk, Jack County, Texas, in December 1975. The notice provided:

Notice is hereby given that in the District Court of Jack County, Texas in and for the 235th Judicial District of Texas, there is pending a certain suit, stayled EVA HAMMAN, ET VIR vs. GLADYS A. RITCHIE, A FEMME SOLE, and numbered 5796, wherein Plaintiffs are Eva Hamman, joined pro forma by her husband, Blake Hamman, and the Defendant is Gladys A. Ritchie; that such suit is in the nature of a breach of trust committed by Gladys A. Ritchie to the beneficiary, Eva Hamman, and for partition, and involves the title to all that certain real estate situated in Jack County, Texas, known and described as set forth in Exhibit A, which is attached hereto and incorporated herein for all intents and purposes, and that the undersigned Plaintiff is seeking affirmative relief in such cause, in that she is suing for the title to such real estate as her interest may appear.

The Jack County farm was described in Exhibit A as one of the properties involved in the litigation between Eva and her mother.

In October 1976 Southwestern Gas enters the picture. In this month Southwestern Gas began negotiations with Gladys Ritchie for the purchase of an easement across the Jack County farm. Southwestern Gas sought a right-of-way for a pipeline that would transport natural gas from a nearby producing field, the Worthington Ranch. On October 7 Gladys executed a right-of-way easement to Southwestern Gas. The easement was 40 feet wide and 15,423 feet long. She received $4,615.50 for the conveyance. At the time of the conveyance the parties agreed that Gladys was the record fee owner of an undivided one half interest in the farm and the life tenant in the other undivided one half with Eva Hamman as a remainderman. The

parties also stipulated that at the time the easement was executed Southwestern Gas had constructive knowledge of the lis pendens notice and title litigation between Eva and Gladys. At the time her mother granted Southwestern Gas the easement, Eva had no knowledge of the conveyance and Southwestern Gas did not gain her consent to the conveyance.

Southwestern Gas began construction of the pipeline immediately. The pipeline, known as the Worthington Lateral, was completed in December 1976 and immediately began operation. The Worthington Lateral is six and five-eighths inches in diameter and carries approximately five million cubic feet of natural gas per day at a pressure of approximately seven hundred and twenty pounds per square inch.

On December 28, 1978, the lawsuit between Eva and Gladys was settled. The judgment of the state court incorporating the settlement provided that all of Gladys' interests in the Jack County farm were divested and that Eva receive a life estate in the entire farm with the remainder in fee to her three sons. In exchange for this portion of the settlement, Gladys received complete title in other lands in which she and Eva had had joint interests.

Following the settlement, Eva and her family moved onto the Jack County farm. At this point the Hammans became aware of the pipeline's presence. In the summer of 1980 Eva demanded that Southwestern Gas re-lay the pipeline below a depth of 30 inches or remove it from her land. Southwestern Gas refused.

In October 1980 the Hammans filed suit in federal district court alleging that, in constructing and operating the Worthington Lateral, Southwestern Gas had violated the Natural Gas Pipeline Safety Act, 49 U.S.C. § 1671 *et seq.*, and the regulations promulgated under the Act. The Hammans also asserted a pendent state law

claim that Southwestern Gas had laid and did maintain the Worthington Lateral across their farm without any valid authority or easement. In July 1982 on Southwestern Gas' motion, the district court granted summary judgment against the Hammans on their federal claim and dismissed the pendent state law trespass claim. On appeal by the Hammans, we reversed and remanded for further proceedings. *See Hamman v. Southwestern Gas Pipeline, Inc.*, 721 F.2d 140 (5th Cir. 1983).[1]

On remand the Hammans' claims were tried before a jury. During the trial the district court informed the parties that it had decided that Southwestern Gas was a trespasser as a matter of law and that it would instruct the jury accordingly. The jury returned a verdict finding Southwestern Gas had failed to meet several safety standards in constructing and maintaining the Worthington Lateral and finding Southwestern Gas liable for $209,250 in damages arising from its trespass on the Jack County farm ($150,000 of the award was for the Hammans' mental anguish). On its own initiative the district court reduced the amount awarded for mental anguish by $25,000. Southwestern Gas filed a motion for judgment notwithstanding the verdict asserting that the damages awarded to the Hammans were improper as a matter of law because Southwestern Gas was not a trespasser. The motion was overruled, and the district court entered judgment in favor of the Hammans awarding them damages, attorney's fees, and prejudgment interest, and in addition ordering Southwestern Gas to correct certain deficiencies in the Worthington Lateral.

## II.

Southwestern Gas raises four grounds of error on appeal. First, it contends that it

---

1. In reversing we held that the Worthington Lateral was a "transmission line" under the Natural Gas Pipeline Safety Act and therefore it had to meet the safety standards established by federal regulations. We remanded so that compliance with these regulations could be determined. 721 F.2d at 143. We also reversed the district court's dismissal of the Hammans' state law trespass claim since the Hammans had raised a sufficient federal claim to activate the court's pendent jurisdiction. *Id.* at 144. We remanded so the court could decide whether it would exercise its pendent jurisdiction. *Id.*

was and is not a trespasser as a matter of law. Second, it alleges that the damages, particularly the mental anguish award, are not recoverable as a matter of law and are not supported by the evidence. Third, it objects to the award of prejudgment interest as improper. Finally, it complains about the award of prospective attorney's fees to the Hammans. We consider each of these contentions in turn below.

### A.

Southwestern Gas argues that we should reverse the judgment because the district court's decision that it was a trespasser as a matter of law is erroneous. We disagree.

As a preliminary matter we must decide whether Southwestern Gas has preserved for appellate review its challenge on the trespass issue. Southwestern Gas did not object to the court's instruction to the jury that it was a trespasser. Based on this failure the Hammans' claim that Southwestern Gas has waived the opportunity on appeal to raise the trespass issue.

Ordinarily a party must object to a jury instruction to preserve any error about the instruction for appeal. Fed.R.Civ.P. 51. We have applied this requirement with an eye toward the practicalities of trial litigation. In cases where the trial court has been presented with undisputed facts and a disputed question of law, where the parties' arguments on the question of law have been brought to the court's attention, and where the court has decided the question of law during the course of the trial, we have not required the unsuccessful advocate to object to the jury charge to preserve the issue for appellate review. *See Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 387 (5th Cir.1985); *Menard v. Penrod Drilling Co.,* 538 F.2d 1084, 1088 n. 4 (5th Cir.1976); *Industrial Development Board of the Town of Section, Alabama v. Fugua Industries,* 523 F.2d 1226, 1237 (5th Cir.1975). *See also* 5A J. Moore & J. Lu-

cas, *Moore's Federal Practice* ¶ 46.02, at 1907 (2d ed. 1986).

In this case the parties stipulated to the facts involved in the trespass issue, and both submitted trial briefs on the issue. In the pretrial order the trespass issue was labeled a disputed question of law. During the latter stages of trial the court informed the parties that it had decided that as a matter of law Southwestern Gas was a trespasser and that it would instruct the jury accordingly. We therefore find that Southwestern Gas' position on the trespass issue was sufficiently presented to the district court so as to preserve this error for our review. We turn then to the merits of Southwestern Gas' contention that it is not a trespasser as a matter of law.

Under Texas law a trespasser is one who enters upon the property of another without any right or lawful authority. *See Texas-Louisiana Power Co. v. Webster,* 127 Tex. 126, 91 S.W.2d 302 (1936); *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 933–34 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). Southwestern Gas must then have a legal right to be present on the Hammans' farm by way of its pipeline; if it does not, it is a trespasser.

Southwestern Gas claims to have a right to be present on the Hamman farm because Gladys Ritchie effectively conveyed to it a right-of-way easement for the pipeline. Southwestern Gas contends that at the time the easement was conveyed Gladys possessed the legal authority to grant the easement over the Jack County farm because she was the present possessory owner of the entire property, owning in fee an undivided one half interest and being a life tenant in the other undivided one half of the farm.[2] The Hammans respond that Southwestern Gas was a lis pendens purchaser and as such it took the easement subject to the resolution of the litigation between Gladys and Eva. They thus conclude that Southwestern Gas received no legal right to be present on the

---

**2.** Under Texas law a life tenant may grant an easement over the life estate but the easement lasts only as long as the life tenant is alive. *See First National Bank of Amarillo v. Amarillo Na-*

*tional Bank,* 531 S.W.2d 905, 907 (Tex.Civ.App. —Amarillo 1975, no writ). Gladys Ritchie is still alive.

Jack County farm because the settlement of the litigation divested Gladys of any interest in the property. Southwestern Gas retorts that the lis pendens notice was not effective so that the interest it acquired from Gladys is not subject to the settlement's provisions. The trespass issue accordingly is resolved by considering the effect of the lis pendens notice filed by Eva Hamman.

■ In Texas the lis pendens doctrine provides that one acquiring an interest in property the subject of a lawsuit takes the interest subject to the parties' rights as finally determined by the court. *See Texas Water Rights Comm'n v. Crown Iron Works*, 582 S.W.2d 768, 771 (Tex.1979); *Neel v. Fuller*, 557 S.W.2d 73, 76 (Tex. 1977). For the lis pendens doctrine to be activated in litigation involving the title to real property, a party involved in the dispute must file a written notice with the county clerk in the county in which the property is located, informing those interested about the litigation and identifying the property subject to the dispute. *See* Tex.Prop.Code §§ 12.007, 13.004 (Vernon 1984). Once the lis pendens notice is filed, it is effective notice of the pending litigation as to the whole world. *See* Tex.Prop. Code § 11.004 (Vernon 1984); *see also* 1 Tex.Jur.3d *Actions* § 296, at 735 (1979).

■ A prospective purchaser of the property is informed by the lis pendens notice that the title to the property is in dispute and any interest it acquires is subject to the outcome of that pending litigation. *See Briscoe v. Bronaugh*, 1 Tex. 326, 327 (1846); *Allen-West Commission Co. v. Gibson*, 228 S.W. 342 (Tex.Civ.App.—Dallas 1921, writ ref'd); *see also* 1 Tex.Jur.3d *Actions* § 300, at 741 (1979). A lis pendens purchaser is charged with the duty to investigate the dispute, discover its scope, facts, and applicable defenses and counterdefenses, and, if necessary, to ensure that any defenses favorable to it are interposed by the party from which it will gain title. *See Kropp v. Prather*, 526 S.W.2d 283, 287 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r. e.); *Daugherty v. Garrett*, 336 S.W.2d 642, 646 (Tex.Civ.App.—San Antonio 1960, writ

dism'd); *York v. Carlisle*, 19 Tex.Civ.App. 269, 46 S.W. 257, 258 (Tex.Civ.App.1898, no writ); 1 Tex.Jur.3d *Actions* §§ 300, 304 (1979). Texas law does provide, however, that the lis pendens notice does not inform a prospective purchaser of matters not evident from the pleadings and papers in the pending litigation or matters not reasonably discoverable. *See Kropp*, 526 S.W.2d at 287; *see also* 1 Tex.Jur.3d *Actions* § 301, at 743 (1979).

■ A lis pendens purchaser is not favored under Texas law and a purchaser with notice of the lis pendens proceeds at its own risk. The purchaser bears the burden of protecting its interest during the litigation. The lis pendens purchaser is bound by agreements entered into by its grantor during the course of the litigation and is charged with protecting its interests which could be affected by such agreements. *See* 1 Tex.Jur.3d *Actions* § 304, at 748–49 (1979). As the leading encyclopedia on Texas law states:

> The grantee or [lis pendens] purchaser stands in the shoes of his vendor, and acquires only whatever title remains in his vendor at the termination of the suit. If the litigation is won by the grantor the conveyance is effective. If not, the grantee may acquire nothing.

1 Tex.Jur.3d *Actions* § 289, at 725 (1979).

In this case Southwestern Gas does not challenge the validity of the lis pendens filing by Eva Hamman. The lis pendens notice was properly filed in Jack County and properly described the Jack County farm as property involved in the underlying litigation between Eva and her mother, Gladys. Southwestern Gas thus had at least constructive knowledge at the time it took its easement from Gladys Ritchie that her title to the farm was under attack. Southwestern Gas is therefore a lis pendens purchaser of its easement over the Jack County farm.

■ Southwestern Gas argues, however, that the lis pendens notice and pleadings in the state court did not inform it that Gladys' title was subject to being divested if Eva prevailed in the litigation, and, ac-

cordingly, its interest should not be affected by the litigation's outcome. We disagree. The lis pendens notice and the operative pleadings both state that Eva was at the least attempting to divest or extinguish her mother's life estate. Southwestern Gas concedes that Gladys' life estate was crucial to her authority to convey the easement over the farm because without the life estate she would not individually own the entire surface of the farm—a perquisite to her ability to convey alone the easement. Since this crucial part of her title was challenged, Southwestern Gas was put on notice that at least half of its grantor's title interest was open to attack. With such notice Southwestern Gas' subsequent actions in acquiring an easement from Gladys alone were taken at its own risk under the Texas law of lis pendens.

Southwestern Gas further contends that it was not a lis pendens purchaser because the asserted purpose of Eva's state court action—the cancellation of her mother's life estate—is not possible under Texas law. Southwestern Gas asserts in essence that since it had evaluated Texas law and decided that Eva's action insofar as it attacked Gladys' life estate was not meritorious, it did not have notice of any viable challenge to Gladys' title.

■ Southwestern Gas cites no authority for this proposition and we have found none. We do not believe, however, that its suggested limitation on the lis pendens doctrine is sound. First, to allow a potential lis pendens purchaser to evaluate the viability of another party's lawsuit and to decide that the lawsuit is meritless would extend substantial protection to a party not favored in Texas law. Second, in many cases where the law is less than clear, an element of subjective reliance and interpretation by the potential lis pendens purchaser about what Texas law is would be inserted into the lis pendens doctrine thereby implicitly amending the requirements of the Texas lis pendens statute. Third, to allow the lis pendens purchaser to rely on its own interpretation of Texas law would alter the rule that the purchaser takes subject to the result of the litigation

which could possibly be different from the purchaser's interpretation. Finally, the potential lis pendens purchaser can protect its interest either by ensuring that its grantor does nothing during the course of the litigation to injure its rights or by intervening directly in the action between its grantor and the other party so that it can participate in the litigation. 1 Tex.Jur.3d *Actions* §§ 304, 305, 306 (1979).

■ Southwestern Gas also argues that even if it purchased the easement pendente lite, its interest should not be affected by the judicially approved settlement reached between Eva and Gladys which divested Gladys of all interest in the farm. Furthermore, Southwestern Gas apparently contends that even if its interest could be affected by a settlement, the results of this settlement should not be held against it because it did not have notice that all of Gladys' title in the farm would be extinguished.

We answer Southwestern Gas' first point by noting that a lis pendens purchaser's interest is conditioned upon the outcome of the pending litigation whether that outcome is arrived at by litigation or by agreement. *See* 1 Tex.Jur.3d *Actions* § 305, at 749 (1979). *See also Montserrat Overseas Holdings, S.A. v. Larsen*, 709 F.2d 22, 24 (9th Cir.1983) ("[I]t is uniformly recognized that one who acquires an interest in land subject to an existing interest which is the basis of a lawsuit takes subject to the judgment in that suit even if that judgment is pursuant to a settlement between the parties.").

■ As to Southwestern Gas' second contention that it should not be bound by the settlement, we have already decided that Southwestern Gas had notice that Gladys' title was under challenge. Since Southwestern Gas was put on notice that its grantor's title was subject to attack, the fact that all of its grantor's title was divested by the settlement rather than only part of it is of no consequence. This conclusion is bolstered by the fact that if the settlement had provided only for the divestment of Gladys' life estate (the relief pled by Eva), Southwestern Gas would still be a

trespasser because Gladys and Eva would be co-tenants, and under Texas law one co-tenant cannot grant an easement over an undivided co-tenancy. . *See Elliott v. Elliott,* 597 S.W.2d 795, 802 (Tex.Civ.App.—Corpus Christi 1980, no writ); *see also Texas Mortgage Co. v. Phillips Petroleum Co.,* 470 F.2d 497, 499 (5th Cir.) (applying Texas law), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1927, 36 L.Ed.2d 410 (1973). Southwestern Gas knew Gladys' title was under attack and subject to divestment, and the settlement divested Gladys of her title; we cannot now say that Southwestern Gas had no notice of the result reached by the settlement. We therefore hold that Southwestern Gas' interest in the farm was subject to the settlement reached between Eva and Gladys because it had notice from the lis pendens and active pleadings that its grantor's interest was open to divestment.[3]

As a lis pendens purchaser Southwestern Gas was euphemistically "rolling the dice." The validity of the easement it obtained was contingent upon the outcome of the Hamman-Ritchie litigation. Southwestern Gas failed to protect its interests involved in that dispute. That litigation ended with Gladys being divested of all interest in the Jack County farm. The dice have come up "snake eyes" and Southwestern Gas loses.

We hold that as a matter of law Southwestern Gas was and is a trespasser on the Jack County farm since its grantor lost all authority to allow Southwestern Gas entry upon the property. Accordingly, we affirm the district court's ruling on this point of law.

### B.

In its second ground of error, Southwestern Gas challenges four of the damage awards to the Hammans as being improper as a matter of law and excessive based upon the evidence produced at trial. The four awards were for mental anguish, cost of stone removal, cost of road repair, and cost of farm equipment. For the reasons stated below, we affirm these awards.

As to the legal challenges to the awards, Southwestern Gas asserted in the district court and asserts on appeal that it is not a trespasser and that it is not accountable for any damages suffered by the Hammans. We have however held that Southwestern Gas was and is an intentional trespasser on the Jack County farm. As a trespasser Southwestern Gas is accountable to the Hammans for all damages to property and persons proximately caused by its wrongful conduct. *See Harned v. E–Z Finance Co.,* 151 Tex. 641, 254 S.W.2d 81, 85 (1952). Southwestern Gas clearly is legally accountable for the damages to the land, roads, and farm equipment. *See Whitehead v. Zeiller,* 265 S.W.2d 689, 691 Tex.Civ.App.—Fort Worth, no writ). Texas courts have also held that a trespasser is liable for mental anguish caused by its intentional tort. *See Teledyne Exploration Co. v. Klotz,* 694 S.W.2d 109, 111 (Tex.App.—Corpus Christi 1985, ref'd n.r. e.); *Michels v. Crouch,* 150 S.W.2d 111, 113 (Tex.Civ.App.—Eastland 1941, writ dism'd judgmt. cor.). Accordingly, we find no basis in Texas law for Southwestern Gas' argument that these damages were not recoverable as a matter of law.

Southwestern Gas also challenges the damage awards, particularly the mental anguish damages, as not being supported by sufficient evidence.

It is a well settled rule that "in the absence of a proper motion for directed verdict, sufficiency of evidence supporting the jury's findings is not reviewable on appeal." *Bunge v. Post,* 643 F.2d 372, 374 (5th Cir.Unit A Apr.1981). *See also* 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2536, at 593 (1971). In making a motion for directed verdict a party is required to state the grounds supporting its motion. *Id.* § 2533, at 580–82; *see*

---

3. We express no opinion on a situation where a purchaser is not informed by the lis pendens notice and active pleadings of a result arising out of a later settlement. As an example, if Eva's suit had only sought an accounting and did not challenge Gladys' title, as it explicitly did, Texas law might not hold Southwestern Gas to a settlement divesting Gladys of her title. As noted above the distinction between this case and our example is that Southwestern Gas was informed that Gladys' title was under attack and subject to divestment.

*also* Fed.R.Civ.P. 50(a). If a party fails properly to assert a motion for directed verdict based upon the insufficiency of the evidence at the close of all the evidence, the party also waives the right to seek a judgment non obstante veredicto based upon the sufficiency of the evidence. *See Miller v. Rowan Companies, Inc.,* 815 F.2d 1021, 1023 (5th Cir.1987). Absent a directed verdict and a judgment n.o.v. raising sufficiency of the evidence, our review of evidentiary sufficiency to support the jury's verdict is limited to whether there is any evidence to support the jury's decision, so as to ensure that a complete injustice has not occurred. *Coughlin v. Capital Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978).

■ In this case Southwestern Gas made no actual directed verdict at the close of the plaintiffs' case-in-chief. In fact, construing the situation in Southwestern Gas' favor, it at best was presumed to have made a non-specific motion for directed verdict at the close of the Hammans' case.[4] Furthermore, Southwestern Gas failed to make a motion for directed verdict at the close of all the evidence. In its motion for judgment n.o.v. Southwestern Gas obliquely challenged the evidence supporting the jury award of mental anguish and property damage, but this motion was properly overruled by the district court because it was not supported by a proper directed verdict motion. Based upon the requirements of the rules of procedure and our caselaw, we conclude that Southwestern Gas has failed to preserve the evidentiary sufficiency point of error for our review.[5]

■ Under the "any evidence" standard that we must employ to test the jury's verdict, we are obliged to affirm the damages. Hamman and her family did testify that they worried about and were greatly troubled over the pipeline's presence under their farm, especially since they were farmers and the Worthington Lateral was often buried only inches below the soil. Eva Hamman also testified that she was distressed and indignant over the pipeline's continued presence even after she asked Southwestern Gas either to re-lay the pipeline or to remove it. There was also testimony that Southwestern Gas left large stones exposed on the property after the pipeline construction which obstructed travel and farming efforts on the farm, that several farm roads had been ruined, and that the farm equipment had been damaged from a collision with the pipeline during plowing. We do not sit as the original triers-of-fact and what we might have decided if doing so or reviewing for sufficiency is irrelevant. The above is some evidence to support the particular damage awards, and with that in the record we find no error in the damage awards.

## C.

Southwestern Gas' third ground of error challenges the award of prejudgment interest to the Hammans. Southwestern Gas contends that the Hammans are not entitled to an award of prejudgment interest under Texas law and, even if they are, they failed to request an award of prejudgment interest in their pleadings. We reject both contentions.

■ The recovery of interest prior to the date of judgment as an element of damages is a substantive question controlled by the state law governing the claim giving rise to the damages. *Wood v. Armco, Inc.,* 814 F.2d 211, 213 n. 2 (5th Cir. 1987). In *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), the Supreme Court of Texas held "that, as a matter of law, a prevailing plaintiff may

---

**4.** At the close of the Hammans' case-in-chief the district court stated that it would consider Southwestern Gas' motion made at that time but that Southwestern Gas would be obliged to state its specific position(s) later. Southwestern Gas at no later time actually specified the grounds for its "presumed" directed verdict.

**5.** We have also reviewed Southwestern Gas' objections to the jury charge on these damages.

Its objections were based upon its continued insistence that it was not a trespasser. At no point did Southwestern Gas' counsel object to the submission of these damages based on insufficiency of the evidence. Our review of the record thus discloses that at no time prior to its motion for judgment n.o.v. did Southwestern Gas inform the court of its evidentiary objection.

recover prejudgment interest compounded daily (based on a 365–day year) on damages that have accrued by the time of judgment." *Id.* at 552, 554. We have construed *Cavnar* as announcing an equitable prejudgment interest rule available in all cases. *Crown Central Petroleum Corp. v. National Union Fire Insurance Co.,* 768 F.2d 632, 634, 637 (5th Cir.1985). As prevailing plaintiffs on their state tort claim, the Hammans were entitled under Texas' broad prejudgment interest rule to an award of prejudgment interest.

█ Southwestern Gas also claims that the Hammans are not entitled to an award of prejudgment interest because they did not specifically request such an award in their pleadings, citing *Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80 (Tex.1976). As an initial matter we note that "while the substantive questions of entitlement to interest and the rate of interest are to be resolved by the applicable state law, the adequacy of a plaintiff's pleadings must be resolved by reference to Fed.R.Civ.P. 54(c)." *Crown Central,* 768 F.2d at 638. We have also stated that rule 54(c) does not require a plaintiff to specifically plead a request for prejudgment interest. *Id.; see also Bowers v. Firestone Tire & Rubber Co.,* 800 F.2d 474, 478–79 (5th Cir.1986). Like the plaintiffs in *Crown Central* and *Bowers,* the Hammans' complaint contained a general prayer for "further relief, at law and equity, to which Plaintiff may show itself justly entitled." We held that this was sufficient notice pleading of a potential award of prejudgment interest in *Crown Central* and *Bowers,* and we do so again.

Accordingly, we find no error in the award of prejudgment interest to the Hammans.

### D.

Southwestern Gas' final ground of error is that the district court erred in awarding prospective attorney's fees to the Hammans for this appeal. The award of attorney's fees was authorized by the Natural Gas Pipeline Safety Act, 49 U.S.C. § 1686. Southwestern Gas now contends that since

it has not appealed the portion of the judgment involving violations of the Act, the award of attorney's fees for this appeal should be vacated. We disagree.

█ If the trial court had acted on its own initiative or at the request of the Hammans in awarding the prospective attorney's fees we might consider Southwestern Gas' argument. But Southwestern Gas itself in its own proposed judgment, submitted to the district court, provided for an award of attorney's fees for this appeal to the Hammans without conditioning their award on a subsequent appeal involving the Act. It is clear then that Southwestern Gas requested the district court to grant the Hammans prospective attorney's fees, and under the "invited error" doctrine, it cannot now be heard to complain about the award. *See United States v. Wurtsbaugh,* 140 F.2d 534, 537 (5th Cir.1944); *Gundy v. United States,* 728 F.2d 484 (10th Cir.1984).

### III.

For the reasons stated above, we affirm the judgment of the district court in all respects.

AFFIRMED.