RESOLUTION TRUST CORPORATION, as Receiver for Chisholm Federal Savings and Loan Association and as Conservator for Chisholm Federal Savings Association, Plaintiff–Appellee,

v.

Carl Lee KEMP, Dena Lee Kemp, Robert Roberts, Mary Roberts, Unified Mortgage Company, Jerry Wayne Baese, Jennie Faye Baese, Kraft Employees Credit Union, Defendants–Appellants,

and

Commonwealth Land Title Insurance Company and Fidelity National Title Insurance Company of Texas, Appellants.

CHISHOLM FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff–Appellee,

v.

Carl Lee KEMP, et al., Defendants,

Robert Roberts, Mary Roberts, Unified Mortgage Company, Jerry Wayne Baese, Jennie Faye Baese, Kraft Employees Credit Union, Defendants–Appellants.

Nos. 91–1162, 91–1653.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1992.

---

**19.** *Price Waterhouse v. Hopkins,* 490 U.S. 228, 248, 109 S.Ct. 1775, 1789, 104 L.Ed.2d 268, 289 (1989).

**20.** *Id.*

**21.** *See Pullman–Standard v. Swint,* 456 U.S. 273, 291, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66, 81 (1982).

Susan J. Foster, Larry F. Amerine, Biggers, Beasley, Amerine & Earle, Dallas, Tex., for defendants-appellants.

W. Ralph Canada, Jr., Daena G. Ramsey, Hopkins & Sutter, Dallas, Tex., for plaintiffs-appellees.

Before GOLDBERG, SMITH, and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

This case concerns the integrity of the public records system in Texas. We decide three property law issues: first, whether recordation of a partial release provision in a subordination agreement between two lenders entitled the third-party Appellants to enforce the release provision and thus preclude judicial foreclosure; second, whether the existence or disposition of litigation between the two lenders regarding the superiority of their liens on the property justified abating this action or granting a new trial; and, third, whether the Appellants constituted "good faith purchasers" entitled to the value of improvements on the property upon foreclosure.

## I. BACKGROUND

In 1986, Whittle Development ("Whittle") executed two promissory notes payable to Kingfisher Savings and Loan Association ("Kingfisher") to finance Whittle's development of a subdivision in Rockwall County, Texas. Deeds of trust covering real property in Rockwall County ("Property") and recorded in the deed records of Rockwall County secured the notes. Needing more funds to complete development of the subdivision, Whittle later executed a promissory note payable to Hiawatha Savings and Loan Association ("Hiawatha"), secured by a deed of trust on the same Property ("Hiawatha Lien"). This lien on the Property was also recorded in the deed records of Rockwall County.

Whittle's two lenders, Kingfisher and Hiawatha, had executed several "Subordination, Indemnification and Release Agreements," wherein Kingfisher subordinated its liens on the Property to Hiawatha's lien ("Subordination Agreements"). The Subordination Agreements were also recorded in the Rockwall County deed records. As Whittle sold a lot out of the Property, the Subordination Agreements contemplated that Kingfisher would release its lien on that lot after receiving notice from Hiawatha of the pending sale of the lot by Whittle ("Partial Release Provisions").[1] The Subordination Agreements did not entitle Kingfisher to any of the proceeds from sales of lots out of the Property until Whittle paid the Hiawatha loan in full.

In late 1988, the Federal Savings and Loan Insurance Corporation transferred part of Kingfisher's assets, including the aforementioned notes ("Chisholm Notes") and deeds of trust covering the Property ("Chisholm Liens"), to Chisholm Federal Savings and Loan Association ("Chisholm").[2] In September 1989, Chisholm

---

**1.** The Agreements provided in relevant part that Kingfisher hereby agrees that, so long as any amounts are outstanding with respect to the Hiawatha loan, Kingfisher shall, without the payment to or receipt by Kingfisher of any consideration therefor, execute and submit to Hiawatha ... partial releases of lots out of the

Property upon Kingfisher's receipt of notice from Hiawatha of the pending sale of any such lot(s).

**2.** In the spring of 1991, the Office of Thrift Supervision ("OTS") appointed Resolution Trust Corporation ("RTC") as receiver for Chisholm and chartered Chisholm Federal Savings Associ-

filed a Notice of Lis Pendens ("NLP"), which referenced a suit filed by Chisholm against Hiawatha regarding the superiority of Chisholm's liens on the Property and the enforceability of the Subordination Agreements ("Hiawatha Litigation").

Whittle had defaulted on its obligations under the Chisholm Notes. In November 1989, several owners of lots in Rockwall County sued in state district court to enjoin Chisholm from foreclosing on property purchased from Whittle to satisfy Whittle's debt.[3] The owners claimed entitlement to the partial releases envisioned in the Subordination Agreements. Chisholm removed the action to federal district court based on diversity jurisdiction. Chisholm also counterclaimed for judicial foreclosure of its liens on the property. The district court dismissed the owners' suit against Chisholm.

At this point in the litigation, the district court realigned the parties, with Chisholm as the plaintiff pursuing its judicial foreclosure claims against the owners and their lenders ("Defendants" or "Appellants"). Defendants counterclaimed for the value of the improvements made to the Property.

The district court denied the Defendants' motion for continuance and abatement pending disposition of the Hiawatha Litigation. Then, faced with cross motions for summary judgment, the district court granted Chisholm's motion for summary judgment and denied Defendants' motion for summary judgment. On December 31, 1990, the court entered its final judgment, not only ordering the foreclosure of Chisholm's liens on the property at issue, but also ruling that the Defendants should take nothing on their counterclaim for improvements. The district court subsequently denied the Defendants' motion to reconsider and to alter or amend the memorandum order, motion to alter or amend the final judgment and memorandum order, and motion for a new trial.[4]

Finding no error, we affirm the district court's denial of Appellants' motion for continuance and abatement, grant of summary judgment for Chisholm, denial of Appellants' motions to alter or amend the judgment, and its denial of Appellants' motion for a new trial.[5]

## II. DISCUSSION

### A. Notice of the Chisholm Liens and the Subordination Agreements

To affirm the district court's grant of summary judgment, this Court must be convinced, after an independent review of the record, that there is "no genuine issue as to any material fact" and that Chisholm was "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see General Elec. Capital Corp. v. Southeastern Health Care, Inc.*, 950 F.2d 944, 947–48 (5th Cir.1991). No genuine issue of material fact exists " 'if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.' " *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

---

ation ("CFSA"). CFSA purchased all of the assets and assumed most of the liabilities of Chisholm, then OTS named RTC as conservator for CFSA. For simplicity, we refer to the Appellee as Chisholm, although on July 9, 1991 (prior to the consolidation of case no. 91–1162 with case no. 91–1653, *see infra* n. 4), this Court granted RTC's motion to substitute itself as Appellee in place of Chisholm and CFSA in case no. 91–1162.

This Court also carried Appellants' motion to substitute RTC as counter-defendant to Appellants' counterclaim with the case. Because we affirm the district court's judgment that the Appellants take nothing on their counterclaim, *see infra* pp. 664–65, we need not rule on the motion.

**3.** Only two owners, the Roberts and the Baeses, pursue this appeal because of lot sales, lien releases, and a foreclosure.

**4.** On July 29, 1991, this Court granted the Appellants' motion to consolidate case no. 91–1162 with case no. 91–1653. The Defendants appeal the district court's denial of their motion for continuance and abatement, its summary judgment in favor of Chisholm, and its denial of their motions to alter or amend judgment in case no. 91–1162. In case no. 91–1653, the Defendants appeal the district court's denial of their motion for a new trial.

**5.** Because we affirm the district court, we need not reach the issue whether the RTC can raise 12 U.S.C. § 1823(e) for the first time on appeal.

475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). We construe the evidence and inferences drawn from that evidence " 'in the light most favorable to the party resisting the motion,' "—in this case, the owners and their lenders. *General Elec.*, 950 F.2d at 947–48 (citation omitted). When "the only issue before the court is a pure question of law," however, "summary judgment is appropriate." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir.1991) (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991)). Whether recordation of the Subordination Agreements between Chisholm and Hiawatha, which contained the Partial Release Provisions, entitled the third-party Appellants to enforce the provisions and thus preclude judicial foreclosure constitutes a purely legal question.[6]

### 1. *Notice.*

Basic Texas property law provides that "[a] purchaser is charged with knowledge of the provisions and contents of recorded instruments ... [and] with notice of the terms of deeds which form an essential link in their chain of ownership." *Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex.1984) (per curiam) (citation omitted), *cited in Inwood N. Homeowners' Assoc., Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex.1987). Texas Property Code section 13.002 provides that "[a]n instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument." Tex. Prop.Code Ann. § 13.002 (Vernon 1984). We do not find it surprising, then, that subsequent innocent purchasers are entitled to the benefit of *releases of lien* "placed upon public records." *Moran v. Wheeler*, 87 Tex. 179, 27 S.W. 54, 55, 56 (Tex.1894).

Appellants characterize their defense theory as one of "constructive notice and release." Appellants argue that Chisholm retains *no* liens on the Property for one of two reasons: either the Chisholm Liens were "automatically released" when Chisholm received notice of the sale of Appellants' property or, alternatively, the Chisholm Liens became "unenforceable" upon Chisholm's failure to execute the partial releases required by the Subordination Agreements. The success of both aspects of the Appellants' theory depends upon the effect the law gives the recordation of the Subordination Agreements.

We agree with Chisholm that mere notice of the Subordination Agreements, which contained the Partial Release Provisions, does not translate into an automatic release of the Chisholm Liens or the conclusion that the Chisholm Liens are unenforceable. Appellants rely upon the Texas Supreme Court case of *Moran v. Wheeler*.[7] As Chisholm notes, however, the *Moran* case involved the effect of recording a *release* of lien, not the recording of an agreement contemplating partial releases under certain conditions. *Moran*, 27 S.W. at 55 (owner of note had released the lien and the release appeared on the record). There, the Texas Supreme Court simply held that because the owner of the note had recorded the release of the lien and the assignee of the lien had failed to record the assignment, "there was nothing [in the record] to notify [the subsequent innocent

---

**6.** Texas law governs our resolution of this issue. The seminal case in support of this proposition is *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**7.** Appellants rely on only one other decision to support their "constructive notice" proposition, the 1933 Texas Court of Appeals case of *Cook v. Leslie*, 59 S.W.2d 302 (Tex.Civ.App.—San Antonio 1933, no writ). *Cook* involved a partial release provision in a deed conveying the property to the purchasers claiming the benefit of the release. As in this case, the purchasers had constructive notice of the release provisions, but in *Cook* the deed contained the release provision and bound the mortgagee to its covenants in its deed to the mortgagor. Here, the *Subordination Agreements*, not the deeds, included the Partial Release Provisions—no document incorporating release provisions existed between the mortgagee and the mortgagor, Whittle.

Moreover, the original grantor and grantee intended the deed's release provision to benefit the third-party purchasers in *Cook*. The district court found that the two lenders who executed the Subordination Agreement did not intend to benefit third-party purchasers.

purchaser] that any other person had become entitled to the lien." *Id.* 27 S.W. at 56. Unlike the situation in *Moran,* however, we emphasize that the public records in Rockwall County did *not* reflect that Chisholm had released its liens on the Property. Nor did the recordation of the Subordination Agreements serve to obliterate the Chisholm Liens.

■ Instead, the deed records of Rockwall County indicated the existence of the prior Chisholm Liens on the Property. Appellants took their interests in the Property subject to the Chisholm Liens because the deeds of trust were recorded *before* the Appellants acquired their interests in the Property. The record establishes that Chisholm's Liens were superior to the Appellants' interests in the Property: Chisholm owned the Chisholm Notes, which were secured by the Chisholm Liens, which in turn were promptly recorded in the deed records of Rockwall County.

Appellants depend on the public record system as a basis for their "constructive notice and release" argument, yet virtually ignore the import of the recordation of the Chisholm Liens. The "principles of constructive notice" urged by Appellants operate not to their advantage, but to their detriment. The public records system "require[s] that all matters affecting the title to lands should be placed upon public records, so that one who seeks to purchase [the land] may safely judge the validity of the title." *Moran,* 27 S.W. at 55. Chisholm recorded its liens on the Property and afforded Appellants the opportunity to discover the existence of the liens in accordance with the policy underlying the public records system.

2. *Third Party Beneficiary Status.*

■ The issue presented by Appellants is not whether they had *notice* of the Subordination Agreements, but, rather, whether Appellants could claim the *benefit* of the Subordination Agreements. The fact of recordation alone certainly does not confer the right to such a benefit on subsequent individual purchasers. Under Texas law, only *actual parties* to a contract or *in-*

*tended third-party beneficiaries* can claim the benefit of a contract. *Old Stone Bank v. Fidelity Bank,* 749 F.Supp. 147, 152 (N.D.Tex.1990); *cf. Talman Home Fed. Sav. & Loan Assoc. v. American Bankers Ins.,* 924 F.2d 1347, 1350–51 (5th Cir.1991); *Cunningham v. Healthco, Inc.,* 824 F.2d 1448, 1455 (5th Cir.1987).

■ Appellants were not parties to the Subordination Agreements, which the district court found were "executed solely between Chisholm and Hiawatha." As nonparties, then, Appellants had to prove third-party beneficiary status as a precondition to enforcing the Partial Release Provisions of the Subordination Agreements. *Old Stone Bank,* 749 F.Supp. at 152 & n. 13 (citing *Sowell v. Northwest Cent. Pipeline Corp.,* 703 F.Supp. 575, 581 (N.D.Tex. 1988)). Texas law imposes a heavy burden on non-parties, like Appellants—Texas law requires that a party claiming third-party beneficiary status must prove *from the terms of the contracts* that the contracting parties *made* the contracts for the benefit of the third party and *intended* to benefit the third party at the time the parties entered into the contracts. *Talman,* 924 F.2d at 1351 (citing *Hellenic Inv., Inc. v. Kroger Co.,* 766 S.W.2d 861, 864–65 (Tex.App.— Houston [1st Dist.] 1989, n.w.h.); *Republic Nat'l Bank v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 79 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.)); *Healthco,* 824 F.2d at 1455 (quoting *Corpus Christi Bank and Trust v. Smith,* 525 S.W.2d 501, 503 (Tex.1975)). Interpretation of an unambiguous contract represents a matter of law for the court to decide. *REO Indus., Inc. v. Natural Gas Pipeline Co.,* 932 F.2d 447, 453 (5th Cir.1991) (citations omitted). Unless it "clearly appears" that the contracting parties intended to benefit the third party, a court interpreting a contract pursuant to Texas law must construe the agreement consistent with "the presumption that parties contract for themselves." *Talman,* 924 F.2d at 1351 (citing *Republic Nat'l Bank,* 427 S.W.2d at 79).

■ The district court properly looked to the language of the Subordination Agreements to discern whether Chisholm and

Hiawatha intended to benefit the Appellants when they entered into the contracts. *Id.* The court found that the parties "conspicuously fail[ed]" to mention the Appellants in the Subordination Agreements; it concluded that Appellants "provided no such proof" of third-party beneficiary status. Because the parties did not intend the Agreement to benefit the Appellants, the district court concluded that the Appellants had "no standing to enforce its release provisions." Since " 'any doubt should be resolved against' " finding an intent to benefit a third party, we hold that the district court properly resolved this issue. *Healthco,* 824 F.2d at 1456 (quoting *Texas Bank & Trust v. Lone Star Life Ins. Co.,* 565 S.W.2d 353, 357 (Tex.Civ.App.—Tyler 1978, no writ)); *see Talman,* 924 F.2d at 1351 (citing *Republic Nat'l Bank,* 427 S.W.2d at 80). The district court correctly refused to allow the Appellants to enforce the Subordination Agreements as a means of precluding judicial foreclosure. We affirm the district court's summary judgment allowing Chisholm to foreclose its liens on the Property.

## B. Notice of Lis Pendens

Appellants argue that the district court erred in failing to abate this action until final disposition of the Hiawatha Litigation referenced in the Notice of Lis Pendens ("NLP") filed by Chisholm. Appellants assert that the "judgment ultimately entered" in the Hiawatha Litigation—dismissal with prejudice—would have changed the district court's final judgment in this case because it "validated" the Subordination Agreements, which the Appellants argue translates into the automatic release or unenforceability of the Chisholm Liens.[8] This Court reviews a district court's decision on a motion for continuance and abatement for abuse of discretion. *See Federal Deposit Ins. Corp. v. Blanton,* 918 F.2d 524, 533 (5th Cir.1990) (citation omitted).

Under Texas law, a lis pendens purchaser "proceeds at its own risk"—"any interest it acquires is subject to the outcome of the pending litigation."[9] *Hamman v. Southwestern Gas Pipeline, Inc.,* 821 F.2d 299, 304 (5th Cir.), *vacated in part on other grounds on reh'g,* 832 F.2d 55 (5th Cir.1987). The Hiawatha Litigation referenced in the NLP did, according to the district court, "concern[ ] the superiority of Chisholm's liens." But Chisholm and Hiawatha merely litigated the question of which party possessed the superior liens on the Property as between themselves. Chisholm asserts that if it won, it would have retained a first lien on the Property, but if it lost, its second lien would have been superior to the Appellants' interests in the Property. *Whatever the outcome* of the Hiawatha Litigation upon termination of the lawsuit, then, the Chisholm Liens were still superior to the interests held by the Appellants in the Property. The district court correctly denied Appellants' motion to continue or abate this action pending the resolution of the Hiawatha Litigation because the termination of the suit could not have changed the relationship of the title acquired by the Appellants to the Chisholm Liens.

**8.** Appellants also argue that the district court erroneously concluded in its memorandum order that the NLP, in and of itself, "adversely affected" Appellants' claims. Appellants assert that the NLP merely represented notice of pending litigation and had "no bearing whatsoever on this suit." The court did not conclude that the NLP dispositively affected the Appellants' claims; rather, the court apparently referenced the NLP in its response to the Appellants' argument that their reliance on the recorded Subordination Agreements resulted in the automatic release of the Chisholm Liens. The district court noted that Chisholm's filing of the NLP meant that Appellants took with constructive notice "that the superiority of Chisholm's lien

was in litigation," thus, Appellants "could not have relied on the subordination agreement even if they [had] known about it." We stress that it was not the NLP or Appellants' reliance or lack of reliance on the NLP that prevented the Appellants from enforcing the Partial Release Provisions of the Subordination Agreements, but their inability to prove that the parties to the Subordination Agreements intended to make the Appellants third-party beneficiaries of the contracts.

**9.** The district court found that the Appellants purchased their property *after* Chisholm filed the NLP in the appropriate deed records.

■ Appellants challenge the district court's denial of their motion for a new trial on similar grounds. Appellants argue that the district court erred in denying their motion for a new trial because the dismissal of the Hiawatha Litigation constituted "newly discovered evidence" under Federal Rule of Civil Procedure 60(b)(2).[10] This Court reviews a district court's denial of a Rule 60(b)(2) motion for abuse of discretion. *Williams v. Brown & Root, Inc.,* 828 F.2d 325, 328 (5th Cir.1987); *see Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir. Unit A. Jan. 1981) ("denial must have been so *unwarranted* as to constitute an abuse of discretion").

Federal Rule of Civil Procedure 60(b)(2) allows a court to "relieve a party ... from a final judgment, order, or proceeding" if the party finds "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). In this circuit, such newly discovered evidence provides a basis for 60(b) relief only if it satisfies two requirements: 1) Was the evidence "of a 'material and controlling nature' "?; and, 2) Would the evidence "have clearly produced a different result if presented to the court before the original judgment"? *Harrison v. Byrd,* 765 F.2d 501, 503 (5th Cir.1985) (citation omitted), *cited in Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1143 (10th Cir.1991).

Appellants argue that the dismissal with prejudice of the Hiawatha Litigation satisfies the 60(b) prerequisites for relief because the dismissal constitutes newly discovered evidence of a "material and controlling nature" and, if presented to the district court before entry of final judgment, the dismissal "would have produced a different result." As an initial matter, we doubt that the final judgment in the Hiawatha Litigation constitutes "newly dis-

covered evidence" under Rule 60(b). Assuming that it does, Appellants fail to present a cogent explanation as to *why* the dismissal would have produced a different result in this litigation. They merely assert that the dismissal "confirms that the Subordination Agreements were not and could not be set aside." Our holding affirming the district court's conclusion that the Appellants cannot enforce the Partial Release Provisions of the Subordination Agreements renders this point irrelevant.

Rather, we agree with Chisholm, which persuasively argues that the district court correctly denied the 60(b) motion under the standard enunciated in *Harrison.* Earlier presentation of the evidence of dismissal of the Hiawatha Litigation would not have changed the court's rendition of final judgment in favor of Chisholm. The Appellants' interests in the Property remained subject to the Chisholm Liens even after disposition of the Hiawatha Litigation. Because the district court exercised its discretion "in light of the balance that is struck by Rule 60(b) between the desideratum of finality and the demands of justice," we affirm the district court's denial of Appellants' motion. *Seven Elves,* 635 F.2d at 402.

### C. Improvements to the Property

■ Appellants assert that the district court erred in granting Chisholm's motion for summary judgment on Appellants' counterclaim for the value of improvements to the Property. Texas law provides that improvements are encumbered to the same extent as the property. *See Pine v. Gibraltar Sav. Assoc.,* 519 S.W.2d 238, 242 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (citation omitted). The Chisholm Liens "expressly encumber[ed] not only the property but all further improvements to the property." [11]

---

**10.** The district court entered its order denying the Appellants' motion for new trial on May 28, 1991, months after the entry of summary judgment. Both Appellants and Appellee treat the motion as one for relief from final judgment under Fed.R.Civ.P. 60(b)(2).

**11.** The Chisholm deeds of trust both provide that

it being the intention of the parties hereto to preserve this lien on the property herein described *and all improvements thereon, and that may be* hereafter constructed thereon, first and superior to any liens that may be placed thereon, or that may be fixed, given or imposed by law thereon after the execution of this instrument....

In an effort to escape with the value of their improvements to the Property when Chisholm enforces its liens, Appellants rely on the "good faith improver" principle. Under Texas law, a purchaser who makes improvements upon property in the good faith belief that it has good title to the property is entitled to compensation for the improvements. *See Sharp v. Stacy*, 535 S.W.2d 345, 351 (Tex.1976). An improper must show that the improvements were made without actual or constructive notice of another party's superior rights in the property. Constructive knowledge of superior claims destroys a claim for improvements under the good faith improver theory. *Miller v. Gasaway*, 514 S.W.2d 90, 93 (Tex.Civ.App.—Texarkana 1974, no writ); *see Blanar v. Blanar*, 598 S.W.2d 381, 383 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd).

Appellants argue that a genuine issue of material fact, whether they built homes on the property and landscaped the property in the good faith belief that the only liens on the property were the liens of their lenders, precluded the district court's entry of summary judgment. Whether the Appellants constitute "good faith purchasers" entitled to the value of improvements to the Property upon foreclosure constitutes a question of law properly resolvable by the district court.[12] Appellants had constructive notice of Chisholm's superior claims—a simple check of the deed records would have revealed the Chisholm Liens. The Appellants do not have the requisite good faith to qualify as "good faith improvers" under Texas law. We affirm the district court's grant of summary judgment in favor of Chisholm on Appellants' counterclaim for the value of improvements because Appellants' improvements are subject to the Chisholm Lien and Appellants do not qualify as "good faith purchasers."

## III.  CONCLUSION

We refuse to allow the Appellants to manipulate the notice system by using the recordation of the Subordination Agreements as a subterfuge for ignoring the properly recorded Chisholm Liens. Such a construction of this case would annihilate the effective operation of the recording system in Texas.

For the reasons stated above, we AFFIRM the judgment of the district court in all respects.

---

12. Again, we are guided by standards outlined above in reviewing the district court's grant of summary judgment. *See supra* p. 660.