United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 7, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-20807

_____

In The Matter Of:  RAMBA, INC.,

Debtor.

------------------------------------

BAKER HUGHES OILFIELD OPERATIONS, INC.,

Appellee,

versus

LOWELL T. CAGE,

Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JOLLY, SMITH, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this bankruptcy case, the trustee of debtor Ramba, Inc. seeks to avoid a transfer of $85,654.85 made by Ramba to the appellee, Baker Hughes Oilfield Operations, Inc.  The trustee contends that the transfer was a preferential payment of a pre-existing debt, and thus avoidable under 11 U.S.C. § 547(b).  Baker Hughes responds that, _inter alia_, the transfer was not a preferential payment, but instead a contemporaneous exchange for new value.  The bankruptcy court granted summary judgment for the trustee and avoided the transfer.  The district court, however,

reversed and granted summary judgment for Baker Hughes.  For the reasons set forth below, we reverse the judgment of the district court and render judgment for the trustee.

I

Ramba, Inc.[1] ("Ramba") was in the oilfield services business. It purchased supplies, including drilling mud, from the appellee, Baker Hughes Oilfield Operations, Inc. ("Baker Hughes"), and resold the products to its customers.  In August 2000, various creditors brought an involuntary bankruptcy proceeding against Ramba in the Bankruptcy Court for the Southern District of Texas.  On September 8, 2000, Baker Hughes joined the case as a petitioning creditor.

Shortly thereafter, the petitioning creditors reached an agreement with Ramba, under which Ramba would pay off its debts and the creditors would move to dismiss the bankruptcy petition.  Ramba issued checks to all three petitioning creditors, including one to Baker Hughes in the amount of $85,654.85.  The proposed settlement was then submitted to the bankruptcy court.

In reviewing the agreement, the bankruptcy court noted that Ramba was engaged in an effort to sell its Drilling Fluids Division, and that the pending petition was preventing Ramba from attracting a buyer.  The bankruptcy court found that the sale would be in the best interest of unsecured creditors, approved the

---

[1]  At the time of the transfer to Baker Hughes, the debtor did business under the name "Ambar, Inc.".  It subsequently sold the rights to the name "Ambar" and filed the underlying voluntary bankruptcy petition under the name "Ramba, Inc."

proposed settlement, and dismissed the petition on September 12, 2000. Soon thereafter, Ramba sold its Drilling Fluids Division for, among other things, the assumption of $12 million in trade debt.

Unfortunately, the sale and accompanying removal of debt were not enough to stave off insolvency. In November 2000, Ramba filed a voluntary Chapter 7 bankruptcy petition. Lowell T. Cage was appointed as Ramba's bankruptcy trustee.

In April 2002, the trustee brought this action to avoid various pre-petition transfers -- including the $85,654.85 payment to Baker Hughes -- pursuant to § 547 of the Bankruptcy Code. Before the bankruptcy court, the trustee contended that the payment was a preferential transfer, and thus avoidable under 11 U.S.C. § 547(b). Baker Hughes responded that, in fact, the payment was a "contemporaneous exchange for new value" -- the new value being the dismissal of the involuntary petition, resulting in the sale of the Drilling Fluids Division -- and was therefore not avoidable. See 11 U.S.C. § 547(c)(1).

The bankruptcy court granted summary judgment for the trustee and avoided the transfer. The district court reversed and ordered that the trustee take nothing. The trustee now appeals.

II

The trustee contends that all three reasons given by the district court for its reversal of the bankruptcy court were in error. Specifically, he contends that the district court erred in

3

holding that (1) Ramba's transfer was a "contemporaneous exchange for new value" -- and thus, not avoidable under § 547 -- as opposed to an avoidable payment of an antecedent debt; (2) Baker Hughes held a statutory lien on Ramba's property, so as to bar the avoidance of the transfer; and (3) questions of material fact exist as to whether Ramba was insolvent at the time of the transfer, precluding summary judgment for the trustee.

We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court applied. A bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed de novo. See In re Jack/Wade Drilling, Inc., 258 F.3d 385, 387 (5th Cir. 2001).

A

First, we consider the proper classification of Ramba's pre-petition transfer for purposes of avoidability under § 547. The bankruptcy court held that the transfer was payment of an antecedent debt, and thus avoidable under § 547(b). As noted, the district court reversed, holding that the transfer was instead a "contemporaneous exchange for new value", which, under § 547(c)(1), may not be avoided.

Section 547(b) of the Bankruptcy Code permits a bankruptcy trustee to avoid a debtor's preferential transfers to creditors. A transfer may be avoided if it (1) benefits the creditor; (2) is made in payment of a debt that is antecedent to the transfer; (3)

4

is made while the debtor is insolvent; (4) is made within ninety days before the filing of the bankruptcy petition; and (5) enables the creditor to receive more that it would under Chapter 7 bankruptcy proceedings.

Section 547(c) lists eight exceptions to the general rule of avoidability under § 547(b).  In particular, § 547(c)(1) provides that a trustee "may not avoid under this section a transfer (1) to the extent such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange".

As a preliminary matter, we note that the "antecedent debt" requirement of § 547(b)(2) and the "contemporaneous exchange" exception of § 547(c)(1) -- although often treated as opposite sides of the same coin -- present two analytically separate inquiries.  See, e.g., In re Armstrong, 291 F.3d 517, 522-26 (8th Cir. 2002).  The former is an element of avoidability; the latter is an exception -- that is, an affirmative defense -- to avoidability.  It is therefore possible that a given transaction might be one or the other, neither, or both.  As such, we consider the two issues separately.

1

First, we inquire as to whether the transfer in this case was made in payment of an antecedent debt.  We begin, as always, with the text of the statute.  The Bankruptcy Code defines a "debt" as

5

a "liability on a claim". 11 U.S.C. § 101(12). A "claim", in turn, is defined broadly as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured". 11 U.S.C. § 101(5). A debt is "antecedent" for purposes of § 547(b) if it was incurred before the alleged preferential transfer. See Southmark Corp. v. Schulte Rothe & Zabel, 88 F.3d 311, 316 (5th Cir. 1996).

Baker Hughes does not dispute that Ramba's transfer was made in satisfaction of a pre-existing debt owed on goods -- i.e., drilling mud -- Ramba had already received. Instead, Baker Hughes contends that, upon joining the involuntary bankruptcy proceeding, its claim, "although originally based on the underlying debt for drilling mud, became something different". In other words, although Ramba's transfer was payment of an antecedent debt within the meaning of § 547(b)(2), it served the additional purpose of securing a discrete present benefit -- that is, the release of the involuntary bankruptcy petition.

Baker Hughes's argument conflates the "antecedent debt" requirement of § 547(b)(2) with the "contemporaneous exchange" exception of § 547(c)(1). The possibility that the latter might apply in this case does not affect our analysis of the former.[2]

_____

[2] Baker Hughes cites Lewis v. Diethorn for the general proposition that, when a debtor pays a creditor in exchange for the creditor's dismissal of a lawsuit, said payment is not made "for or on account of an antecedent debt". 893 F.2d 648, 650 (3d Cir.

6

Whatever else Ramba's transfer might be, it was unquestionably made "on account of an antecedent debt", and that is all that § 547(b)(2) requires.

2

As explained supra, the real thrust of Baker Hughes's argument is that, although Ramba's transfer was made in payment of an antecedent debt, it was also a "contemporaneous exchange for new value", and thus subject to the exception to avoidability set forth in § 547(c)(1).

Section 547(c)(1) provides that a transfer may not be avoided if it is a "contemporaneous exchange for new value given to the debtor". The controlling question in this case is whether the benefit Ramba received in exchange for its payment to Baker Hughes -- i.e., dismissal of the involuntary bankruptcy proceeding -- fits within the statutory definition of "new value".

Section 547(a)(2) defines "new value" as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee ... including proceeds of such property". Baker Hughes contends that its agreement to dismiss the involuntary bankruptcy proceeding enabled

_____

1990). The Third Circuit's opinion in Lewis, however, has been criticized for its assumption, without analysis, that a transfer that serves to secure a present benefit cannot also serve as payment of an antecedent debt. See, e.g., In re Bioplasty, Inc., 155 B.R. 495, 499 (Bankr. D. Minn. 1993) ("The [Lewis] opinion contains no analysis whatsoever, and simply makes the conclusory statement that the payments were made for one reason rather than another."). Thus, we decline to follow the Lewis holding.

Ramba to sell its Drilling Fluids Division, which in turn yielded "money or money's worth".  This argument reflects a misreading of the statute -- subtle, perhaps, but significant.

Certainly, Baker Hughes's dismissal of the petition began a chain of events that ultimately permitted Ramba to acquire money through the sale of its Drilling Fluids Division.  The "new value" described in § 547(c)(1), however, must be "given to the debtor" by the creditor as part of a "contemporaneous exchange".  Thus, it is the precise benefit received from the creditor, and not the secondary or tertiary effects thereof, that must fit within one of the five categories of "new value" -- i.e., money, goods, services, new credit, or the release of property -- enumerated in § 547(a)(2).[3]  The controlling question, then, is whether the benefit Ramba received from Baker Hughes -- that is, dismissal of the involuntary bankruptcy petition -- fits within the statutory definition of "new value".

Baker Hughes concedes that, of the five categories of "new value" set forth in § 547(a)(2), there is only one possible fit: "release by a transferee of property previously transferred to such transferee".  Baker Hughes contends that, because the commencement of an involuntary bankruptcy proceeding "creates an estate and thus

---

[3] To hold otherwise would render the enumerated categories of "new value" in § 547(a)(2) essentially superfluous, since virtually any transaction between a creditor and debtor -- including the act of paying an antecedent debt -- can ultimately be traced to some subsequent financial benefit to the debtor.

is a transfer of property", the dismissal of a bankruptcy proceeding amounts to a release of previously transferred property, within the meaning of § 547(a)(2). Even accepting the validity of the underlying assumptions of this argument, it is unavailing to Baker Hughes.

Baker Hughes's release of property is meaningless for purposes of § 547(a)(2), unless the released property had been "previously transferred" *to* Baker Hughes. Although it is certainly true that commencement of an involuntary bankruptcy proceeding "creates an estate" consisting of most of the debtor's assets, see 11 U.S.C. § 541(a), the accompanying transfer of the property of the debtor (Ramba) is to the estate itself, not to the debtor's creditor (Baker Hughes). See, e.g., In re Perry, 345 F.3d 303, 315 n.15 (5th Cir. 2003). Thus, because the property in the bankruptcy estate had never been transferred to Baker Hughes, Baker Hughes is not a "transferee", and accordingly, its agreement to dismiss the petition was not a "release ... of property", as described in § 547(a)(2).

In sum, the benefit Ramba received in exchange for its payment to Baker Hughes fails to meet the Bankruptcy Code's definition of "new value". We therefore conclude that the district court erred in holding that Baker Hughes was entitled to summary judgment based on the § 547(c)(1) exception to avoidability.

B

9

As an alternative basis for its judgment, the district court also held that Baker Hughes was entitled to summary judgment because it held a statutory lien on Ramba's property at the time of the transfer. Although neither the district court's opinion nor Baker Hughes's brief is entirely clear on this point, it appears that the basis for this holding is 11 U.S.C. § 547(c)(6), which prevents a trustee from avoiding any transfer "that is the fixing of a statutory lien". The trustee contends that this holding was in error.

1

First, we note that the fact that a creditor holds a statutory lien on the property of a debtor is not, in itself, sufficient to trigger the exception to avoidability found in § 547(c)(6). For the exception to apply, the transfer must be the "fixing" of such a lien. The term "fixing" is not defined in § 547 or, for that matter, anywhere else in the Bankruptcy Code. We have previously held, however, that a lien is said to be "fixed" when a creditor has perfected his security interest and "fasten[s] liability" against the debtor's property. See Matter of Henderson, 18 F.3d 1305, 1308-09 (5th Cir. 1994). The transfer in this case was made to settle litigation; it involved neither the perfection of a security interest under Louisiana law nor the fastening of liability upon Ramba's property. Thus, the transfer was not "the fixing of a statutory lien".

10

Baker Hughes, however, contends that § 547(c)(6) should be construed liberally, so as to include, not only the actual "fixing" of a lien, but also any transfer made in satisfaction of a debt that, in turn, prevents a creditor who might otherwise fix a lien from doing so.  Specifically, Baker Hughes argues, based on language from Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc., that the legislative history of § 547(c)(6) mandates that we exempt from the trustee's avoiding power all "transfers in satisfaction of ... liens".  71 B.R. 1005, 1010 (N.D. Tex. 1987).[4]

Inferences drawn from a statute's legislative history, however, cannot justify an interpretation that departs from the plain language of the statute itself.  Moreover, the legislative comments cited by the court in Cimmaron do not refer to the final enacted version of § 547(c)(6).  Instead, they refer to a pre-enactment version that included two additional subsections, including one exempting "transfer[s] ... in satisfaction of ... a lien".  These subsections were ultimately deleted from the final bill.[5]  Thus, even if the language of § 547(c)(6) were ambiguous,

---

[4] See S. Rep. No. 989, 95th Cong., 2d Sess. 88, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5874; H.R. Rep. No. 595, 95th Cong., 1st Sess. 374, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6330.

[5] See 124 CONG. REC. H11089 ("Section 547(c)(6) represents a modification of a similar provision contained in the House bill and Senate Amendment.  The exception relating to satisfaction of a statutory lien is deleted.")

11

the legislative comments cited in Cimmaron have no bearing on its interpretation.

We therefore reject the expansive interpretation of § 547(c)(6) that Baker Hughes proposes, as it runs contrary to the plain language of the statute, which applies only to transfers that are "the fixing of a statutory lien". Because the transfer in this case did not involve the fastening of liability pursuant to a perfected security interest -- i.e., fixing of a lien -- the district court erred in holding that the exception to avoidability found in § 547(c)(6) applies.

2

Baker Hughes further contends that, even if § 547(c)(6) does not apply, the district court's finding that it held a statutory lien on Ramba's property nonetheless entitles it to summary judgment. Baker Hughes argues that, as a statutory lien holder, it was a secured creditor under the Bankruptcy Code, see 11 U.S.C. § 506(a), and its claims therefore took priority over those of unsecured creditors. Thus, Baker Hughes contends, had the case proceeded to Chapter 7 liquidation, it likely would have received the same amount from Ramba's estate as it received from the allegedly preferential transfer. Thus, the trustee cannot show that it satisfied § 547(b)(5)'s requirement that the transfer "enable [the] creditor to receive more than it would receive if" Ramba's estate were distributed under Chapter 7.

12

A prerequisite to Baker Hughes's argument is a showing that, as of the date of Ramba's transfer, Baker Hughes actually held a statutory lien on Ramba's property. Under Louisiana law, the burden of establishing a statutory lien falls to the original vendor -- that is, to Baker Hughes. See In re Exclusive Industries Corp., 41 B.R. 493, 496-97 (Bankr. W.D. La. 1984). The provisions governing liens on movable goods -- such as the drilling mud Baker Hughes sold to Ramba -- are found in articles 3227 and 3228 of the Louisiana Civil Code. Article 3227 provides:

> He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser whether the sale was made on a credit or without <u>if the property still remains in the possession of the purchaser</u>.

(emphasis supplied). Article 3228, entitled "Loss of privilege by sale with other property of purchaser", provides:

> But if he allows the things to be sold, confusedly with a mass of other things belonging to the purchaser, without making his claim, he shall lose the privilege, because it will not be possible in such a case to ascertain what price they brought.

Thus, in order to show that § 547(b)(5) is not satisfied, Baker Hughes must meet the "rather exacting burden" of "identifying the property [that it sold to Ramba] with a great deal of specificity", In re Exclusive Industries Corp., 41 B.R. at 497, and proving that said property had not been sold to a third party, but instead remained in Ramba's possession as of the date of the transfer.

13

Our review of the record has revealed no evidence to show that, at the time of the transfer, the drilling mud sold by Baker Hughes had not already been sold by Ramba. The issue is not addressed in Baker Hughes's brief to the district court, in its brief to this court, or in the district court's opinion. The only evidence on point comes from the affidavit of former Ramba president Tony Caridi, who stated that:

> It was the practice of [Ramba] during this time period to only order goods from its vendors, including Baker Hughes, if such goods were required to satisfy an outstanding order from one of [Ramba's] customers. During this time period, [Ramba] typically did not maintain stores of inventory for any length of time. Normally, all inventory on hand would be "turned over" within a month.

As the trustee points out, the transfer in this case occurred more than four months after Ramba's purchase of the drilling mud.

As noted supra, we review a bankruptcy court's findings of fact for clear error. A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole. See, e.g., United States v. Villanueva, 408 F.3d 193, 203 (5th Cir. 2005). In this case, however, there is simply no evidence to support a finding that Ramba retained possession of the drilling mud as of the transfer date. The only evidence in the record supports the opposite inference -- i.e., that Baker Hughes had lost any lien it held when Ramba sold the drilling mud to a third party.

In sum, the district court clearly erred in finding that Baker Hughes held a statutory lien on Ramba's property. Thus, Baker

14

Hughes's contention that the trustee has failed to satisfy the avoidability requirement of § 547(b)(5) is without merit. We therefore hold that the district court's grant of summary judgment for Baker Hughes was in error.

C

Finally, Baker Hughes reminds us that unless Ramba was insolvent at the time of the transfer, the transfer is not avoidable under § 547(b). It therefore contends that, even if it is not entitled to summary judgment based on either of the exceptions to avoidability discussed above, the district court was nonetheless correct in reversing the bankruptcy court's grant of summary judgment for the trustee because there is a factual dispute as to whether Ramba was insolvent. Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The district court agreed with Baker Hughes and held that a genuine issue of material fact remained as to whether Ramba was insolvent at the time of the transfer.

As noted supra, 11 U.S.C. § 547(b)(3) requires that a debtor be insolvent at the time of an allegedly preferential transfer in order for that transfer to be avoided by the bankruptcy trustee. The Bankruptcy Code, however, creates a rebuttable presumption of insolvency during the 90 days immediately prior to the filing of a

15

bankruptcy petition.  See 11 U.S.C. § 547(f).  The effect of this presumption is to shift the burden to the transferee, here Baker Hughes, to produce evidence of the debtor's solvency as of the transfer date.  See Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp., 158 F.3d 312, 315 (5th Cir. 1998) (citing FED. R. EVID. 301).

Baker Hughes presented three documents to rebut the presumption of insolvency: (1) a balance sheet for Ramba dated March 31, 1999, showing assets of $116 million and liabilities of $92 million; (2) an income statement for the nine-month period ending September 30, 2000, showing a positive operating income of $3.7 million; and (3) a "revenues and expenditures summary" for January through August 2000, showing a net loss of $5,283.00.

The Bankruptcy Code defines insolvency as the financial condition in which "the sum of [an] entity's debts is greater than all of such entity's property".  11 U.S.C. § 101(32)(A).  Two of the documents proffered by Baker Hughes -- the income statement from September 2000 and the "revenues and expenditures summary" from August 2000 -- show only that Ramba had a small net operating loss over the first nine months of 2000.  They do not address Ramba's overall balance of debts and assets, and thus, do not raise genuine questions of fact as to Ramba's solvency.

The one remaining document -- i.e., the March 1999 balance sheet -- does address the overall balance of debts and assets. The obvious weakness of this evidence, however, is that it reflects a

16

balance achieved seventeen months prior to Ramba's transfer. As we explained in Gasmark, the relevant question for purposes of § 547(b)(3) is whether the debtor was insolvent as of "the date of the payment at issue". 158 F.3d at 316. Evidence of solvency nearly one and a half years prior to a given transfer does not create a genuine question of fact as to whether a debtor was insolvent as of the transfer date.

In sum, the district court erred in holding that questions of material fact were raised by Baker Hughes regarding the insolvency requirement of § 547(b)(3). As such, reversal of the bankruptcy court's grant of summary judgment for the trustee was in error.

## III

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case to the district court for entry of judgment in favor of the trustee.

REVERSED and REMANDED.

17