In re GNI GROUP, INC., et al., Debtors.

National Union Fire Insurance Company of Pittsburgh, PA., et al., Appellants,

v.

Randy W. Williams, Trustee, et al., Appellees.

Bankruptcy No. 00–38458.
Civil Action No. H–08–2687.

United States District Court, S.D. Texas, Houston Division.

Dec. 31, 2008.

---

Lon A. Jenkins, Penrod W. Keith, Le-Boeuf Lamb et al., Salt Lake City, UT, Luis M. Nido, Bracewell and Patterson LLP, Washington, DC, W. Steve Smith, McFall Breitbeil Shults PC, Houston, TX, for Debtors.

Randy W. Williams, Houston, TX, pro se.

Allison Davison Byman, Mitchell E. Ayer, Tye Hancock, Thompson Knight LLP, Houston, TX, David Stephenson, Thompson Knight LLP, Austin, TX, John S. Brannon, Thompson & Knight LLP, Dallas, TX, for Appellees.

Kevin Lyskowski, Trial Attorney, Environmental Enforcement Section, Environmental and Natural Resources Division, U.S. Dept. of Justice, Washington, DC, for United States.

## MEMORANDUM AND ORDER

NANCY F. ATLAS, District Judge.

Appellants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), Pacific Employers Insurance Company ("Pacific"), Standard Fire Insurance Company ("Standard"), and Travelers Casualty and Surety Company ("Travelers") (collectively, "Insurers") appeal from the United States Bankruptcy Court's Memorandum and Case Management Order ("Case Management Order") [BR Doc. # 1261; Record on Appeal ("RA") # 39] signed August 20, 2008, and the "Stipulation and Agreed Order By and Among the Trustee, the United States, on Behalf of the Environmental Protection Agency, [and] the Texas Commission on Environmental Quality" ("Agreed Order") [BR Doc. # 1288; RA # 57] signed by the United States Bankruptcy Judge Wesley W. Steen on September 10, 2008. This Court has subject matter jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1). Having considered the parties' briefing,[1] the designated bankruptcy record, and applicable legal authorities, the Court **affirms** the Bankruptcy Court's orders.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

GNI Group, Inc. ("GNI") was engaged in a business that involved radioactive materials. The Insurers issued liability insurance policies (the "Policies") to or for the benefit of GNI (or a predecessor) which may, or may not, provide a duty to defend or coverage for any liability GNI may have for remediation of three contaminated sites. The Policies contain exclusions, conditions and limitations which may limit or exclude coverage for any liability GNI may have.

GNI and certain affiliated companies filed this Chapter 11 bankruptcy case in September 2000. The Bankruptcy Court converted it to a Chapter 7 case in September 2001, and appointed Randy W. Williams ("Trustee") as the Chapter 7 Trustee.

In September 2002, the United States Environmental Protection Agency ("EPA") filed a Proof of Claim for past and future remediation costs associated with three sites owned or operated by GNI that contained radioactive contamination. Later in September 2002, the Texas Commission on Environmental Quality ("TCEQ") filed a motion for allowance of past and future administrative expenses associated with the remediation of the same three sites, and the EPA filed a Request for Payment of Administrative Expenses.

GNI is a shell corporation. It has not engaged in business since 2001, has no officers, directors or employees, and its assets have been almost completely liquidated.

In July 2008, the Trustee, the EPA, and TCEQ filed a joint motion [BR Doc. # 1246; RA # 27] seeking approval of a

---

1. *See* Opening Brief for Appellants [Doc. # 16]; Brief of Appellees [Doc. # 27]; and Reply Brief for Appellants [Doc. # 30].

stipulation and entry of a related agreed order. In the requested Agreed Order, the EPA and the TCEQ's allowed claims are quantified, the Trustee assigns to the EPA and to the TCEQ all GNI's contractual rights under the Policies "without warranty," and GNI waives any claims or causes of action it may have against the United States or the State of Texas with respect to the remediation sites. The Agreed Order provides specifically that neither the Agreed Order nor any actions taken pursuant to it "shall be deemed to constitute an admission by any of the Parties." *See* Agreed Order, p. 13.

Pacific filed a timely objection [BR Doc. # 1250; RA # 28] and National Union filed a timely objection and request for a hearing [BR Doc. # 1252; RA # 30]. Standard and Travelers obtained leave to file a late objection in September 2008 [Doc. # 1271; RA # 48]. The Insurers' objections raised only legal issues. Specifically, Pacific objected based on its position that the settlement violates terms of the Policies and "contemplates triggering insurance coverage under the Policies." National Union also objected that the settlement violates terms of the Policies and was beyond the Bankruptcy Court's power. None of the Insurers disputed the amounts of the claims set forth in the Agreed Order or identified any other factual dispute.

In the Case Management Order, the Bankruptcy Court noted that an Insurer that denied its policy provided coverage or a duty to defend would not be a party in interest entitled to raise an objection to the EPA's and/or the TCEQ's claims.[2] The Bankruptcy Court therefore advised that it would sign the Agreed Order unless at least one of the Insurers filed a stipulation of coverage or conceded a duty to defend. None of the Insurers stipulated

coverage or conceded a duty to defend and, as a result, the Bankruptcy Court signed the Agreed Order on September 10, 2008.

The Insurers appeal from both the Case Management Order and the Agreed Order. The appeal has been fully briefed and is ripe for decision.

## II. STANDARD OF REVIEW

The Court reviews a bankruptcy judge's conclusions of law *de novo* and findings of fact under the "clearly erroneous" standard. *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir.2005). Mixed questions of law and fact are reviewed *de novo*. *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir.2005); *In re Stonebridge Technologies, Inc.*, 430 F.3d 260, 265 (5th Cir.2005).

A factual finding is clearly erroneous "only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Robertson v. Dennis*, 330 F.3d 696, 701 (5th Cir.2003) (internal quotations and citation omitted). Stated differently, a "factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir.2005). "As long as there are two permissible views of the evidence," the Bankruptcy Court's "choice between competing views" is not clearly erroneous. *In re Acosta*, 406 F.3d 367, 373 (5th Cir.2005) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

Matters within a bankruptcy judge's discretion are reviewed for an abuse of discretion. *See In re Gandy*, 299 F.3d 489, 494 (5th Cir.2002). A bankruptcy court abuses its discretion when it "(1)

---

**2.** As is discussed more fully below, the Bankruptcy Court in the Case Management Order

addressed each objection raised by the Insurers.

applies an improper legal standard or follows improper procedures ..., or (2) rests its decision on findings of fact that are clearly erroneous." *In re Cahill*, 428 F.3d 536, 539 (5th Cir.2005).

■ This Court "may affirm if there are grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *In re Cueva*, 371 F.3d 232, 236 (5th Cir.2004) (quoting *Matter of Besing*, 981 F.2d 1488, 1494 (5th Cir.), *cert. denied*, 510 U.S. 821, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993)).

## III. *ANALYSIS*

Appellants in their Opening Brief [Doc. # 10] identify five issues on appeal. Appellants' "Issues Presented for Review" are (1) whether the Bankruptcy Court erred by requiring the insurers to waive rights and defenses as a precondition to their standing to object to the Agreed Order; (2) whether the Bankruptcy Court erred when it signed the Agreed Order without conducting a hearing and making findings of fact and conclusions of law on the record; (3) whether the Bankruptcy Court erred when it concluded that 11 U.S.C. § 363 authorizes the bankruptcy court to allow the assignment of debtor's rights under the insurance policies; (4) whether the Bankruptcy Court erred by signing the Agreed Order in contravention of cooperation clauses in the insurance policies; and (5) whether the Bankruptcy Court erred when it signed the Agreed Order allowing a direct action by the EPA against the Insurers. The Insurers' concerns, while perhaps well-founded if their understanding of the effect of the Case Management Order and the Agreed Order were correct, are not supported by the language of the two orders.

### A. *Standing Issue*

The Bankruptcy Court noted that an insurer who does not have a policy with the debtor under which there is a duty to defend and/or coverage is not a party in interest with standing to object to a creditor's claim.[3] The Insurers, while continuing to deny that there is coverage or a duty to defend under the Policies, argue that they had standing in the Bankruptcy Court proceeding. The Court notes that the Bankruptcy Court carefully considered each objection raised by the Insurers, irrespective of whether the Insurer had standing. Therefore, regardless of any view the Bankruptcy Court may have held regarding the Insurers' standing, he allowed them to file objections to the Agreed Order. He considered and ruled on each of the objections. The Bankruptcy Court's comments regarding the Insurers' standing do not provide the basis for reversal of his rulings on their objections.

■ The Insurers complain specifically that the Bankruptcy Court, after considering the Insurers' objections to the Agreed Order, advised in the Case Management Order that he would sign the Agreed Order unless any Insurer conceded either a duty to defend or coverage under the Policies. If any Insurer conceded a duty to defend, the claims asserted by the EPA and the TCEQ would not be settled and the Bankruptcy Court would then proceed to try those claims as part of the GNI bankruptcy proceeding. The EPA and the

---

**3.** The Trustee questions whether the Insurers are "aggrieved" by the Bankruptcy Court's orders such that they would have standing to pursue this appeal. *See In re Coho Energy, Inc.*, 395 F.3d 198, 202 (5th Cir.2004) (only person "aggrieved" by an order of the Bankruptcy Court has standing to appeal the order). The Court, while noting that the Insurers' status as "aggrieved" is highly questionable, will consider the appeal on its merits.

TCEQ would present their claims and any Insurer conceding a duty to defend would defend against them. No Insurer conceded a duty to defend and, as a result, there was no party to defend against the EPA and TCEQ's claims.[4] The Bankruptcy Court, without a party to represent the opposition, considered and approved the stipulation. The claims by the EPA and the TCEQ were settled, the settlement was approved, and the Bankruptcy Court signed the Agreed Order. The Bankruptcy Court did not err by requiring an Insurer to concede a duty to defend before allowing an Insurer to defend against the claims settled through the Agreed Order.

### B. *Hearing and Findings of Fact and Conclusions of Law*

Bankruptcy Rule 9019 provides that the Bankruptcy Court may approve a settlement "after notice and a hearing." There is no dispute that the Insurers received notice of the Trustee's motion for approval of the settlement with the EPA and the TCEQ, and that Pacific and National Union filed timely objections. The Insurers argue, however, that the Bankruptcy Court improperly approved the stipulation "without conducting a hearing and without making findings of fact or conclusions of law on the record." *See* Opening Brief, p. 1.

The Bankruptcy Court found from his review of the record that there were no factual disputes and that the legal argu-

ments had been adequately briefed. Where there are no factual disputes that would require an evidentiary hearing and where the legal arguments are fully presented such that no oral argument would assist the court, an oral hearing is not required. *See, e.g., Depoister v. Mary M. Holloway Foundation,* 36 F.3d 582, 586 (7th Cir.1994); *Hamman v. Southwestern Gas Pipeline, Inc.,* 721 F.2d 140, 142 (5th Cir.1983) (requirement for a hearing under Federal Rule of Civil Procedure 56(c) does not require an oral hearing). The Bankruptcy Court did not err by approving the parties' settlement without conducting an oral hearing where there were no disputed facts to be decided and the legal issues had been fully and capably briefed.

The Bankruptcy Court in the Case Management Order addressed and ruled on each of the objections asserted by the Insurers. The Bankruptcy Court in the Agreed Order specifically found that the compromise was "fair and equitable and in the best interest of the estate and its creditors." *See* Agreed Order, p. 3. The Bankruptcy Court fully explained the legal and factual basis for approving the settlement,[5] and there was no violation of Bankruptcy Rule 9019.

### C. *Authority to Assign Rights Under the Policies*

The Agreed Order purports to assign GNI's contractual rights under the

---

4. The situation presented to the Bankruptcy Court in this case is analogous to the situation in which an insurance company denies coverage and the debtor simply allows a default judgment to be taken, at which point the "judgment creditor may then litigate with the insurance company." *See, e.g., Matter of Edgeworth,* 993 F.2d 51, 54 n. 10 (5th Cir. 1993). The insurer in such situations cannot simultaneously deny a duty to defend and oppose entry of default judgment against the insured.

5. The Insurers in the body of their Opening Brief challenge the factual basis for the amounts of the allowed claims set forth in the Agreed Order at page 11. Initially, the Court notes that the Insurers did not include in their written objections to the Agreed Order any challenge to the claim amounts. Moreover, the Bankruptcy Court cited to the record and noted that the allowed claims covered past *and future* remediation expenses.

Policies. Such contractual rights are property of the bankruptcy estate. *See Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993) (debtor's contract rights under an insurance policy are property of the estate under 11 U.S.C. § 541(a)). Section 363 of the Bankruptcy Code permits the Trustee to settle claims against the debtor and to "use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b); *Matter of Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 354 (5th Cir.1997). The Insurers argue, however, that the anti-assignment language in the Policies precludes assignment of GNI's rights under Texas law.

■ The Trustee argues that GNI's contractual rights under the Policies is assignable, notwithstanding the anti-assignment language, because the assignment in the Agreed Order occurred post-loss. The Texas Supreme Court has not addressed whether an anti-assignment clause in an insurance policy precludes assignment after the loss has occurred. The majority view appears to be that an anti-assignment provision applies only to assignments before loss. *See, e.g., Lemoyne's Restaurant, Inc. v. Axis Surplus Lines Ins.*, 2008 WL 1988798, *2 (E.D.La. May 2, 2008) and cases cited therein; *see also Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170–71 (2d Cir.2006) and cases discussed therein. The Court agrees with—and believes the Texas Supreme Court would follow—this majority view. As a result, the anti-assignment language in the Policies would not prevent the Trustee from assigning post-loss GNI's contractual rights under the Policies to settle the EPA and TCEQ's

claims under § 363. The Court affirms the Bankruptcy Court's holding in the regard.[6]

### D. *Cooperation Clauses/Direct Action Against Insurers*

■ The Insurers argue that the Bankruptcy Court erred when it approved the parties' settlement in violation of cooperation clauses in the Policies, and that the Agreed Order should be vacated because it "would have the practical effect" of allowing the EPA to file a direct action against the Insurer in violation of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* The Insurers' arguments are based on their reading of the Case Management Order and the Agreed Order. Moreover, the Insurers' arguments fail to acknowledge that under Texas law, coverage issues are justiciable only after a claim for coverage has been asserted against the insurer and the underlying lawsuit has been concluded by final judgment. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004).

■ The Policies include a "Cooperation Clause" that requires the insured to cooperate with the company and precludes the insured, except at his own expense, from voluntarily making payments or incurring any expense. *See, e.g.,* National Union Policy, Conditions, ¶ 4(c).[7] Under this clause, any admission of liability is not binding on the Insurer, and the insured is not allowed to take any action that preju-

---

6. The Court also notes that, if the Trustee did not have the legal authority to assign GNI's contractual rights under the Policies, that defense has not been waived by the Insurers and

can be argued if a claim is asserted against them by the EPA or the TCEQ.

7. It is undisputed that the Policies issued by the other Insurers contain a similar provision.

dices the Insurer's rights to subrogation.[8] The Insurers argue that the Agreed Order prevents the Debtor/Insured from cooperating, admits GNI's liability, and waives any claims that GNI may have against the United States or the State of Texas. Initially, the Court notes that it is not the Agreed Order that prevents GNI from cooperating with the Insurers, but is instead GNI's lack of existence. Additionally, if the Insurers are correct that the assignment of GNI's rights under the Policies would constitute a violation of the Cooperation Clauses, that defense is available to the Insurers should any claim for coverage under the Policies ever be asserted. The same is true for the Insurers' argument regarding a direct action. If the EPA and/or the TCEQ were to file a direct action against the Insurers, the Insurers would be free at that time to assert that the direct action is not permitted under CERCLA.

The Agreed Order, entered in settlement and compromise of creditors' claims in a Chapter 7 bankruptcy proceeding, does not affect any rights the Insurers had before its entry and likely provides the Insurers with additional defenses to coverage that did not previously exist. The Insurers concerns to the contrary do not provide a basis for reversing the Bankruptcy Court's decision to approve the parties' settlement and enter the Agreed Order.

## IV. *CONCLUSION AND ORDER*

The Bankruptcy Court's Case Management Order is correct and appropriate, and the Bankruptcy Court did not err when it signed the Agreed Order after having addressed the Insurers' objections.

It appears that the Insurers are not aggrieved by the Agreed Order and, indeed, may have additional defenses to coverage as a result of the Agreed Order. Accordingly, it is hereby

**ORDERED** that the Bankruptcy Court's Case Management Order [BR Doc. # 1261] and the Agreed Order [BR Doc. # 1288] are **AFFIRMED**. The Court will issue a separate final Order.

---

8. The Insurers object to the provision in the Agreed Order providing that GNI is deemed to have waived any claims or causes of action against the EPA or the TCEQ relating to the remediation sites. The Insurers do not, however, identify any relevant claims or causes of action GNI may have had against the EPA or the TCEQ.