**In re AMERICAN STANDARD BUILDING SYSTEMS, INC., Debtor.**

**William F. Schneider, Trustee, Plaintiff**

**v.**

**Pella Carolina, Inc., Defendant.**

Bankruptcy No. 08–60478.
Adversary No. 10–06031.

United States Bankruptcy Court,
W.D. Virginia,
Lynchburg Division.

Nov. 24, 2010.

William F. Schneider, Esq., Lynchburg, VA, pro se.

Corban A. Klug, Scott Kroner PLC, W. Stephen Scott, Charlottesville, VA, for Defendant.

## DECISION AND JUDGMENT ORDER

ROSS W. KRUMM, Bankruptcy Judge.

On April 8, 2010, a pre-trial conference was held to consider the Chapter 7 Trustee's Complaint to Avoid Preference Pay- ments (hereafter the "Complaint") and Pella Carolina, Inc.'s (hereafter "Pella") Answer to the Complaint (hereafter the "Answer"). As a result of the pre-trial conference a Scheduling Order was entered on April 9, 2010, instructing that: (1) the parties shall submit a joint stipulation of facts on or before April 23, 2010; (2) Pella shall file its Memorandum of Law on or before May 21, 2010; (3) the Chapter 7 Trustee (hereafter the "Trustee") shall file his Memorandum of Law in response on or before June 18, 2010; (4) Pella shall file any Reply Memorandum on or before June 25, 2010; and (5) any request for oral argument or other motions shall be filed on or before July 2, 2010. The parties have submitted their respective pleadings and have not requested oral argument. Accordingly, the matter is now ripe for decision and the Court makes the following findings of fact and conclusions of law.

### Facts

The parties have stipulated to the following facts. Pella is a North Carolina company authorized to transact business in the Commonwealth of Virginia. In 2006 and 2007, Pella supplied window components to the Debtor on a Net 30 credit account basis.

On October 18, 2007, Pella filed suit against the Debtor in the Circuit Court for the County of Henry, Virginia, (hereafter the "State Court") alleging non-payment on a series of invoices for window components and demanding damages in the amount of $59,196.83, together with interest and costs. On November 15, 2007, the State Court entered a Consent Judgment Order in the case, awarding judgment to Pella in the principal amount sued, with interest at the statutory rate of 6.0% per annum from the date of judgment and $151.00 in court costs (hereafter the "Judgment").

On December 7, 2007, Pella submitted a Suggestion for Summons in Garnishment (hereafter the "Suggestion") and a draft Summons in Garnishment (hereafter "Summons") to the State Court in connection with the Judgment. By way of the Suggestion and the Summons, Pella sought to garnish the Debtor's bank account at Branch Banking & Trust Company (hereafter the "Bank").

On December 10, 2007, the State Court issued the Summons and delivered it to the Sheriff of Henry County (hereafter the "Sheriff"). As of December 10, 2007, the balance in the Debtor's corporate account at the Bank was $32,420.07.

On December 14, 2007, the Sheriff served the Summons on the Bank and the Bank made a notation to that effect in the Debtor's account records. On December 14, 2007, the balance in the Debtor's account at the Bank was $48,945.62. Thereafter, negotiations ensued between Pella and the Debtor. At the conclusion of such negotiations, Pella agreed to release the garnishment to allow the Debtor to meet its payroll obligations and the Debtor agreed to pay Pella $24,000 to offset the amount owed under the judgment.

In accordance with this agreement, on December 18, 2007, Pella filed with the State Court a Certification of Release of Garnishment, stating that "it desires its action against Garnishee, Branch Banking & Trust Company, be dismissed." On December 18, 2007 the balance in the Debtor's account at the Bank was $48,476.92.

On December 19, 2007, the Debtor made a $12,000 payment to Pella by Check No. 57505, issued from its account at the Bank. On December 26, 2007, the Debtor made a second $12,000 payment to Pella by Check No. 27523, issued from its account at the Bank.

On February 29, 2008, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code in this Court. On April 9, 2008, the Court converted the case to Chapter 7.

As of June 17, 2010, the status of the Trustee's actions in the Debtor's case were as follows: (1) the Trustee had recovered and liquidated assets and/or preferential payments in the Debtor's bankruptcy case totaling $74,364.10; (2) preference claim settlements totaling $12,304.99 had been noticed for hearing but not yet approved; (3) the Trustee was not aware of any other assets or claims other than the matter before the Court in the case; (4) claims entitled to priority pursuant to 11 U.S.C. § 507(a)(4), (7), or (8) had been timely filed in the case in the amount of $283,799.71; (5) the Trustee had already incurred and paid administrative expenses totaling $6,657.50; (6) his fee as Trustee, based on the assets recovered thus far, is $7,583.45; and (7) additional administrative expenses, including attorney's fees, total at least $7,000.00.

Given the total value of liquidated assets, the total of timely filed unsecured claims entitled to priority, and the total of unpaid administrative claims, there will be no distribution to nonpriority unsecured creditors. Any claim of Pella in this case is a general unsecured claim. The payments made by the Debtor to Pella in December 2007 total more than Pella would receive as a distribution in this case if the payments had not been made.

*Discussion*

I. *11 U.S.C. § 547(b): Trustee's Authority to Avoid a Preferential Transfer*

*United Rentals Inc. v. Angell,* 592 F.3d 525, 528–29 (4th Cir.2010) *cert. denied,* —— U.S. ——, 131 S.Ct. 121, 178 L.Ed.2d 32, (2010) holds that 11 U.S.C. § 547(b) permits a trustee to "avoid as a preference a

transfer made by an insolvent debtor to a creditor on account of an antecedent debt within 90 days before the date of the filing of the bankruptcy petition if …" the transfer "enabled the creditor to receive more than it would have received from the debtor's Chapter 7 bankruptcy on the debt the transfer extinguished if the payment sought to be avoided had never been made." [1]

In this case, it has been stipulated that the payments by the Debtor to Pella occurred within the ninety days preceding the filing of the Debtor's bankruptcy petition. It has also been stipulated that the payments were on account of an antecedent debt and that the payments were made while the Debtor was insolvent.[2] Finally, it has been stipulated that the payments allowed Pella to recover more than Pella would receive as a distribution in this case if the payments had not been made. Thus, it is uncontested that the requirements of § 547(b) have been satisfied. However, Pella asserts that 11 U.S.C. § 547(c)(1) prohibits the Trustee from recovering the transfers made by the Debtor to Pella.

1. 11 U.S.C. § 547(b) states

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before. such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and

## II. 11 U.S.C. § 547(c)(1): Transfers Exempt from Avoidance Under § 547(b)

### A. 11 U.S.C. § 547(c)(1)

11 U.S.C. § 547(c)(1) prohibits a Trustee from avoiding transfers that were "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) [the transfer is] in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1) (West, 2010).

*Angell* accurately states the policy goals of § 547(c)(1) as such:

As its legislative history demonstrates, § 547(c)(1) was designed to address the "generic problem [that] those on the verge of bankruptcy still need to buy things … and the fact that checks are used (with a brief gap between purchase and payment) ought not to render the payment avoidable as one made for an antecedent debt." *Collins v. Greater*

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C § 547(b) (West, 2010)

2. 11 U.S.C. § 547(f) states that "[f]or purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f) (West, 2010). Although neither party has expressly stipulated to the insolvency of the Debtor at the time the transfers were made, the parties have stipulated that the transfers were made in the ninety days prior to the filing of the Debtor's petition. When taken together the stipulation regarding the timing of the transfers and § 547(f) raise the presumption that the Debtor was insolvent when the transfers were made. Neither party has attempted to rebut this presumption. Accordingly, the Court finds that for purposes of § 547(b), the Debtor was insolvent at the time the transfers were made.

*Atl. Mortgage Corp. (In re Lazarus),* 478 F.3d 12, 18 (1st Cir.2007) (citing H.R.Rep. No. 95–595, at 373, 1978 U.S.C.C.A.N. 5963, at 6329 (1977)).... Protecting contemporaneous exchanges for new value from avoidance does not harm the preference section's goal of protecting the equality of distribution among the debtors because such exchanges do not diminish the size of the debtor's estate.

*Angell,* 592 F.3d at 529.

### B. Burden of Proof

11 U.S.C. § 547(g) states "the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section." 11 U.S.C. § 547(g) (West, 2010). *See Angell,* 592 F.3d at 531. In this case, Pella must demonstrate the nonavoidability of the transfers under § 547(c)(1).

### C. The Release of Pella's Garnishment Order Does Not Constitute New Value

■ For purposes of § 547(c)(1), 11 U.S.C. § 547(a)(2) defines new value as:

[M]oney or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

11 U.S.C. § 547(a)(2) (West, 2010).

Pella, asserting that it extended new value to the Debtor in exchange for the transfers in question, makes the following argument:

In this case, the value given for the two $12,000 payments was the release of the bank garnishment. On December 10, 2007, when the Henry County Circuit Court placed the garnishment summons in the hands of the sheriff, the writ of fieri facias included in the garnishment summons became a lien upon the Debtor's intangible estate, including all funds in the Debtor's corporate bank account. *See* Va.Code Ann. § Va.Code Ann. § 8.01–501 (2010). Between December 10, 2007, and December 18, 2007, the Debtor held as much as $48,476.92 in the corporate account. All such funds were subject to Pella's lien.

Thus, when Pella agreed to release the garnishment and waive its lien rights under the writ of fieri facias, Pella not only permitted the Debtor to retain $24,476.92 in monies to which Pella was entitled under the bank garnishment (i.e. $48,476.92 less the $24,000 compromise payment), but Pella also extended the solvency of the Debtor for the benefit of all of its creditors by allowing the Debtor to make its payroll payments and stay in business. Indeed, when Pella agreed to the compromise payment, it expected that the Debtor would remain economically viable and pay off the remaining balance of the judgment Pella had obtained against it.

Memorandum of Pella Carolina, Inc. in Opposition to the Trustee's Claim of Preference, pg. 4, *Schneider v. Pella Carolina, Inc. (In re American Standard Building Systems, Inc.),* Adversary Proceeding No. 10–06031 (Bankr.W.D.Va. May 19, 2010). For the following reasons the Court finds that Pella's release does not constitute new value and finds that Pella has not extended new value for purposes of § 547(c)(1).

*Angell* addressed a factual scenario in which a Chapter 7 trustee sought to avoid three transfers made by the debtor to a creditor pursuant to § 547(b). The creditor/recipient contested the avoidance ac-

tion and argued that the transfers were protected under § 547(c)(1). Specifically, the creditor argued that the transfers constituted new value because they had the effect of discharging the creditor's right to file and enforce a mechanic's lien against the debtor. *Angell,* 592 F.3d at 529. The creditor further argued that because it did not enforce its mechanic's lien the debtor was able to obtain cash that would have been directed to the creditor had its lien attached. *Id.*

*Angell* found that "regardless of whether the transfers set in motion a chain of events that resulted in the [d]ebtor's recoupment of the amounts paid, [the creditor] did not show that such new value was 'given to the debtor ... as part of a contemporaneous exchange.'" *Id.* at 533 (internal quotations omitted). In arriving at this conclusion *Angell* cited *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.),* 416 F.3d 394, 399–400 (5th Cir.2005) which held that "it is the precise benefit received ... and not the secondary or tertiary effects thereof, that must fit within one of the five categories of 'new value'... enumerated in § 547(a)(2)." *Id.* Focusing on the precise benefit received by the debtor *Angell* held that the only benefit that the creditor "showed the [d]ebtor was given as part of the contemporaneous exchange for the transfers was the extinguishment of its debt, which does not fit within any of the five new-value categories." *Id.* at 533. Thus, *Angell* found that the creditor had not met its burden with regard to demonstrating that new value had been extended under § 547(c)(1) and therefore, affirmed the district court's affirmation of the bankruptcy court's decision to permit the trustee to avoid the transfers under § 547(b).

In this case, Pella asserts that it extended new value to the Debtor by releasing its garnishment that had attached to the Debtor's bank account. Pella contends that by releasing its garnishment Pella permitted the Debtor to access the funds in the account and make payroll payments. Defendant's Memorandum in Opposition, pg. 4.

Pursuant to *Angell,* the Court will focus on the precise benefit received by the Debtor that resulted in the transfers being made and not the secondary or tertiary effects of the alleged benefit, i.e. the ability of the Debtor to access the funds in the account and make payroll payments. In this case, the Court finds that the only benefit Pella has shown was extended to the Debtor as part of the contemporaneous exchange for the transfers was the release of Pella's garnishment. The Court finds that the release of the garnishment in this case is similar to the agreement in *Angell* to forfeit the right to file and enforce a mechanic's lien. In both *Angell* and the case here the creditors gave up the right to utilize a method of collecting their respective debts which would have given them priority in payment over general unsecured creditors. *Angell* stands for the general proposition that giving up the right to collect a debt by a legal process which would give the creditors priority over unsecured creditors does not constitute new value under § 547(c)(1), at least where the legal right given up is utilization of statutory mechanic's lien remedies. This Court does not view the relinquishment of use of the statutory garnishment process any differently and holds that the reasoning and result in *Angell* are applicable in this case. Accordingly, the Court finds that Pella has not met its burden with regard to demonstrating that it extended new value to the Debtor in exchange for the transfers and thus, Pella has not satisfied all of the elements needed

to successfully raise the defense of § 547(c)(1).[3]

### III. Conclusion

Since the Court has found that the transfers are not exempted from avoidance under § 547(c)(1), and since both parties agree that § 547(b) applies to the transfers in question, the Court finds that the Trustee may avoid the transfers and recover the two $12,000.00 transfers from Pella pursuant to 11 U.S.C. § 550(a)(1).[4,5] Accordingly, it is

### ORDERED

The transfers by the Debtor to Pella of $12,000.00 each on December 19, 2007, and December 26, 2007, are avoided under 11 U.S.C. § 547(b) and, pursuant to 11 U.S.C. § 550(a)(1) **JUDGMENT** is awarded in the amount of $24,000.00 together with interest at the Federal Statutory Rate of Interest applicable for the period beginning with the filing date of the above-captioned adversary proceeding until paid and any applicable statutory costs.

Copies of this Decision and Order are directed to be sent to the Trustee, William F. Schneider, Esquire and to counsel for Pella, Corban A. King, Esquire and W. Stephen Scott, Esquire.

---

**3.** The Court notes that the decision by a creditor to give up its right to use a legal process to collect a debt cannot constitute new value because it offends the policy purposes embodied in § 547(c)(1). As stated earlier in the Decision, § 547(c)(1) was established to permit a debtor to continue to make purchases while on the verge of bankruptcy by giving creditors/vendors the peace of mind that the purchase would not be avoided. This buyer/seller relationship is premised on the idea that the debtor receives something in return for payment and that what the debtor receives is equal in value to the what the debtor pays. Thus, the estate is left unchanged. However, the decision to forgo a method of collection in favor of another gives nothing of value back to the debtor and leaves the estate in a lesser position than before the transfer. This diminution of the estate destroys the very ideological basis for permitting these transfers to occur and thus, cannot be allowed.

**4.** 11 U.S.C. § 550(a)(1) states, in relevant part

Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
    (1) the initial transferee or the entity for whose benefit such transfer was made....
11 U.S.C. § 550(a)(1) (West, 2010).

**5.** Since the Court has found that the release of Pella's lien did not constitute new value in exchange for the transfers and thus, the transfers do not qualify for the exemption provided by § 547(c)(1) the Court need not address whether the transfers were substantially contemporaneous.