STEWART, Chief Judge,
concurring in part and dissenting in part:
I concur in the panel majority’s conclusion that: 1) Scott failed to provide the required statutory notice and should therefore be dismissed from this case; 2) the Louisiana NAACP has standing only to challenge the in-person transactions; and 3) Schedler has enforcement authority under Section 10 of the NVRA, and the district court’s injunction should be affirmed on this issue. However, I would affirm the district court’s ruling that blank declination forms do not relieve voter registration agencies of the responsibility to distribute voter registration forms to applicants. I therefore respectfully dissent from the panel majority’s decision to vacate that portion of the injunction.
I.
I would affirm the district court’s ruling that a blank declination form does not relieve a voter registration agency from providing an applicant with a voter registration form. Section 7(a)(6) requires a voter registration agency to provide an applicant with a voter registration form during a covered transaction “unless the applicant, in writing, declines to register to vote.” Id. § 1973gg-5(a)(6)(A) (emphasis added). A blank declination form does not satisfy the “in writing” requirement.
As noted by the Tenth Circuit, failing to check a box on the declination form does not fall within the purview of the ordinary meaning of “in writing.” See Valdez v. Squier, 676 F.3d 935, 945 (10th Cir.2012) (noting that the ordinary meaning of “in writing” is “[t]he state or condition of having been written or penned; written form” (internal quotations and citation omitted)). Further, Congress chose to expressly note that the failure to check a box constitutes a declination for section 7(a)(6)(C), but it did not include a provision that the same reasoning applied to section 7(a)(6)(A). See men v. Holder, 556 U.S. 418, 430, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (observing that when “Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” (internal quotation marks and citation omitted)). Finally, requiring states to give an applicant a form unless he unequivocally declines one in writing by checking the box marked “no” is consistent with Congress’s intent to “increase the number of eligible citizens who register to vote in elections for Federal office.” § 1973gg(b)(l).
Schedler fails to offer any compelling arguments in support of his interpretation. First, he contends that the “in writing” requirement is satisfied as soon as an applicant signs a declination form. However, that interpretation renders section 7(a)(6)(B) superfluous. Section 7(a)(6)(B) requires declination forms to, include the question: “If you are not registered to vote where you live now, would you like to apply to register to vote here today?” An applicant would have no need to check either box on the declination form in response to this question if the applicant could simply decline to vote by signing the form. Second, he argues that an applicant declines to register to vote regardless of whether the applicant checks the “no” box or fails to check either box on the declina *843 tion form. He fails to recognize that the NVRA gives import to whether an applicant declines “in writing.” If the applicant declines in writing, the agency need not provide the applicant with a voter registration form. See § 1973gg-5(a)(6). However, the agency is not relieved of that duty if the applicant fails to check either box. See id. He also argues that applicants who check the “no” box may desire to receive a voter registration form later. Even accepting that premise, he fails to explain why a failure to check either box on the declination form should be interpreted as satisfying the “in writing” requirement of Section 7(a)(6)(A)(ii).[1]
The panel majority concludes that Section 7(a)(6)(B)(iii) is ambiguous. However, Section 7(a)(6)(B)(iii) clearly states that “failure to check either box ... constitute[s] a declination to register for -purposes of subparagraph (C).” (emphasis added). The panel majority further concludes that it would be inconsistent to interpret Section 7(a)(6)(B)(iii) as not applying to Section 7(a)(6)(A). However, reading Section 7(a)(6)(B)(iii) in accordance with its plain language would not create any inconsistency. To the contrary, if an applicant leaves the declination form blank, the agency would no longer have to assist the applicant with registering to vote, but the agency would remain responsible for providing the applicant with a voter registration form'. As we have noted previously, “we do not inquire what Congress meant; we only ask what it said.” Guilzon v. Comm’r of Internal Revenue, 985 F.2d 819, 823 n. 11 (5th Cir.1993).
Therefore, I would affirm the district court’s holding that a voter registration agency must provide an applicant with a voter registration form during a covered transaction unless the applicant checks the “no” box on the declination form.
II.
Accordingly, I would affirm the district court’s injunction insofar as it held that the blank declination forms do not relieve a voter registration agency from distributing voter registration forms.

. Schedler makes additional arguments based on legislative history and language in a Federal Election Commission implementation manual; however, those arguments are equally unavailing because his interpretation is not supported by the language of Section 7(a). See In re Ramba, Inc., 416 F.3d 394, 401 (5th Cir.2005) (“Inferences drawn from a statute’s legislative history, however, cannot justify an interpretation that departs from the plain language of the statute itself.”).